DANIEL E. FINN, Respondent, *v.* CITY OF NEW YORK, Appellant.

154

Argued January 25, 1940; decided March 5, 1940.

*William C. Chanler, Corporation Counsel (Robert H. Schaffer* and *Paxton Blair* of counsel), for appellant. The court below erred in holding that the provisions of section 149 of the Charter of the City of New York (L. 1901, ch. 466, as amd.) qualified or altered the substance of plaintiff's constitutional right, for the Legislature did no more than prescribe the method of enforcement of the constitutional right. (*Matter of Shevlin* v. *LaGuardia*, 279 N. Y. 649; *Matter of Rushford* v. *LaGuardia*, 280 N. Y. 217; *Quayle* v. *City of New York*, 278 N. Y. 19; *Dodge* v. *City of New York*, 278 N. Y. 25.) The constitutional prohibition applies to reductions in salary of constitutional State officers after the beginning of the term of office. Before the incumbent takes office the Legislature may reduce the salary and may enact a statute governing the receipt of compensation, such as section 149 of the charter. (*O'Malley* v. *Woodrough*, 307 U. S. 277; *People ex rel. McLaughlin* v. *Board of Police Commrs.*, 174 N. Y. 450; *Black* v. *Graves*, 257 App. Div. 176; 281 N. Y. 792.)

*David Segal* for respondent. Plaintiff, both as County Clerk and Sheriff, was a constitutional State officer and

entitled to the benefit of section 9 of article 10 of the State Constitution. (*Eberhard* v. *City of New York*, 163 Misc. Rep. 370; *Hanley* v. *City of New York*, 250 App. Div. 552; 275 N. Y. 482.) Section 149 of the old charter is unconstitutional as to the plaintiff in his capacity as Sheriff and County Clerk because it violates section 9 of article 10 of the State Constitution. (*People ex rel. Wood* v. *Draper*, 15 N. Y. 532; *Quayle* v. *City of New York*, 278 N. Y. 598; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50.)

SEARS, J. During the years beginning January 1, 1930, and ending on the 31st day of December, 1933, the plaintiff was the duly elected and qualified Clerk of the county of New York; and during the years beginning the 1st day of January, 1934, and ending with the 31st day of December, 1937, plaintiff was the duly elected and qualified Sheriff of the county of New York. The salaries of the Clerk and of the Sheriff during the periods mentioned were each fixed by law at $15,000 a year. (Laws of 1884, ch. 299; Laws of 1927, ch. 688.) Ineffective attempts to reduce the salaries under the provisions of chapter 637 of the Laws of 1932, and chapter 178 of the Laws of 1934 may be disregarded inasmuch as the attempted reductions have been held invalid. (*Hanley* v. *City of New York*, 250 App. Div. 552; affd., 275 N. Y. 482.) The old charter of the city of New York (Laws of 1901, ch. 466, as amd.), which was in effect throughout the period during which the plaintiff occupied the offices of County Clerk and Sheriff, contained in its section 149 the following language: " Every official, employee or person who shall sign the receipt upon such payroll as having received the amount therein mentioned in full payment for services rendered by him for the entire time specified in such payroll, shall be deemed to have made an accord and satisfaction of all claims against the city for wages or salary due to such person from the city of New York for the period covered by such payroll, unless at the time of signing such payroll the person receiving such wages or salary shall write legibly thereon in connection with his

receipt, that the amount received is received under protest, and unless such protest is so written upon such payroll no recovery shall be had against the city of New York upon any further claim for wages or salaries for the period of time covered by such payroll."

This statute was applicable to the offices of County Clerk and Sheriff. (*Quayle* v. *City of New York*, 278 N. Y. 19; *Dodge* v. *City of New York*, 278 N. Y. 25.) While the plaintiff was the incumbent of the offices of Clerk and Sheriff of the county of New York, he received at various times from January 1, 1933, to December 31, 1937, less amounts than he was entitled to by reason of his annual salary of $15,000, but, upon the official payrolls of the defendant, he did not write when receiving these smaller sums that the amounts received were received under protest. Thus, a statutory accord and satisfaction resulted, and the plaintiff cannot recover the balances of his $15,000 annual salary which he seeks to recover in this action, provided the quoted provisions of section 149 as applied to the plaintiff's offices are constitutional. (*Quayle* v. *City of New York, supra; Dodge* v. *City of New York, supra.*)

The plaintiff challenges the constitutionality of the section as applicable to him under the provisions of section 9 of article X of the Constitution of the State, as the section was then numbered (and now renumbered as section 12 of article XIII) which reads as follows: " No officer whose salary is fixed by the Constitution shall receive any additional compensation. Each of the other state officers named in the constitution shall, during his continuance in office, receive a compensation, to be fixed by law, which shall not be increased or diminished during the term for which he shall have been elected or appointed; * * *."

The plaintiff contends that being a State officer named in the Constitution, both as Clerk and as Sheriff, the addition of the requirement of written protest abridges his right to full compensation and conflicts with the constitutional provision. Although the plaintiff's salary, both as Clerk and Sheriff, was protected by this provision (*Hanley* v.

*City of New York, supra; Eberhard* v. *City of New York,*
163 Misc. Rep. 370), we do not so construe section 149.
That section became effective long before the plaintiff was
elected to either of his offices. A reduction in the salary
of a constitutional officer other than one whose compensa-
tion is fixed by the Constitution itself may be made at any
time if the reduction is to be effective only as to those
assuming office thereafter. We look upon the statute,
however, not as reducing salaries or authorizing reductions,
but as providing an administrative detail of which plaintiff
had notice at the time he took office. That a State officer
named in the Constitution may, in general, waive his right
to full salary is established by the cases already cited. The
Constitution does not inhibit the Legislature from providing
reasonable administrative procedure and safeguards. As
the plaintiff had notice of the requirement for noting a pro-
test and failed to comply with it, he accepted the lesser
sums in full payment, and the Legislature has said that his
action once so taken is final. We find in this no conflict
with the constitutional provision.

The judgment should be reversed and the complaint
dismissed, with costs in all courts.

RIPPEY, J. (dissenting). Plaintiff was Clerk of the county
of New York for the period commencing January 1, 1930,
and ending December 31, 1933, and Sheriff of the county of
New York for the period beginning January 1, 1934, and
expiring on December 31, 1937. At the time of his election
to each office and during his incumbency thereof the Consti-
tution of 1894 was in effect. As Sheriff and as Clerk, he was
a constitutional State officer and, in each case, elected for a
fixed term of three years (State Const. art. 10, § 1). The
Constitution (Art. 10, § 9) provided that " no officer whose
salary is fixed by the constitution shall receive any additional
compensation." The salary of the County Clerk and Sheriff
of the county of New York was not specifically fixed by the
State Constitution. Article 10, section 9, of the Constitu-
tion further provided: " Each of the other state officers

named in the constitution shall, during his continuance in office, receive a compensation, to be fixed by law, which shall not be increased or diminished during the term for which he shall have been elected or appointed." The County Clerk and Sheriff were among such " other state officers named in the constitution." Those provisions of the Constitution were carried over from the 1874 amendment of the Constitution of 1846. Accordingly, the annual salary of County Clerk of the county of New York was fixed at $15,000 (Laws of 1884, ch. 299) and the salary of Sheriff of that county was fixed at the same amount (Laws of 1927, ch. 688). Such was the annual salary of plaintiff fixed by the Legislature at the time he was elected to each office, at the time he took office and during his term of office as Clerk and Sheriff respectively. By the express command of the Constitution that salary could not be reduced during either term for which he was elected.

In 1932, under the asserted authority of the so-called Economy Act (Laws of 1932, ch. 637), defendant reduced plaintiff's salary as County Clerk for the year 1933 to $13,390 and the salary of the office of Sheriff to a like sum. The reduction was held to be beyond the power of the city to make since the Economy Act specifically excepted such officers within the territory embraced within the first and second judicial districts (*Eberhard* v. *City of New York*, 163 Misc. Rep. 370; *Hanley* v. *City of New York*, 275 N. Y. 482). During 1933 the reduction in plaintiff's salary as County Clerk amounted to $1,610, to recover which sum he sued under the second cause of action set out in his complaint. That relief was granted in the court below.

The salary for the office of Sheriff, reduced as above noted, was claimed to be $13,390 at the time plaintiff was elected to the office and took office. That fact has no bearing on the issue to be determined here, however, since the city had no power to make the reduction under chapter 637 of the Laws of 1932 in the salary attached to the office as the Sheriff was excepted from the operation of the salary reduction provisions of the act and his salary was in law that

fixed by the Legislature in 1927 at $15,000 both at the time of his election and at the time he entered on the discharge of his duties as Sheriff. Under the asserted authority of the so-called LaGuardia Act (Laws of 1934, ch. 178, in effect April 10, 1934), the city reduced plaintiff's salary *during his term of office* as Sheriff on two occasions. The difference between the salary of $15,000 per year and the amount actually paid during the term of his office as Sheriff was $16,041.75, for the recovery of which amount he sued in the first cause of action set out in his complaint. By the express provisions of that act under which the city assumed to make the reductions (Laws of 1934, ch. 178, § 4), such reductions were unauthorized as the Sheriff was one of those to whom the act did not apply. On that count, judgment was awarded him in the court below.

The city asserts in this action, however, that, in spite of the illegality of the reductions, which illegality the city concedes, the plaintiff is estopped to recover because plaintiff accepted and kept the salary as reduced without protest. Reliance is placed on an excerpt of section 149 of the Greater New York Charter (Laws of 1901, ch. 466, as amd.), which, so far as claimed to be pertinent, provides: " Every official, employee or person who shall sign the receipt upon such payroll as having received the amount therein mentioned in full payment for services rendered by him for the entire time specified in such payroll, shall be deemed to have made an accord and satisfaction of all claims against the city for wages or salary due to such person from the city of New York for the period covered by such payroll, unless at the time of signing such payroll the person receiving such wages or salary shall write legibly thereon in connection with his receipt, that the amount received is received under protest, and unless such protest is so written upon such payroll no recovery shall be had against the city of New York upon any further claim for wages or salaries for the period of time covered by such payroll."

It is stipulated here that plaintiff signed the payroll in each instance where payment to him of the reduced salary

was made and omitted to "write legibly thereon in connection with his receipt, that the amount received is received under protest." The payroll is not before the court nor is there any evidence that plaintiff signed the receipts upon the payroll as having received the amounts shown on the receipts "in full payment for services rendered by him for the entire time specified in such payroll." Only by inference, if at all, can defendant claim that the pleadings bring plaintiff within the provisions of the statutory accord and satisfaction alleged. We place our decision, however, solely upon the constitutional question involved.

The question of the constitutionality of section 149 of the charter as applied to constitutional State officers has never been before this court. In *Matter of Shevlin* v. *LaGuardia* (279 N. Y. 649) and in *Matter of Rushford* v. *LaGuardia* (280 N. Y. 217) it was held that section 149 was constitutional when applied to other than constitutional State officers. In *Quayle* v. *City of New York* (278 N. Y. 19) and in *Dodge* v. *City of New York* (278 N. Y. 25), where the foregoing charter provision, unchallenged as to constitutionality, was before the court for consideration, it was held that constitutional State officers who took office after the enactment of the charter provision might be compelled to protest the payroll in writing in the event of salary reduction as provided by the charter and that, in the event of their failure to so protest the non-payment of the full salary, they would not be heard to assert any claim to salary alleged to be unpaid. Since the constitutionality of the statute was not then challenged by the plaintiffs nor considered by the court, it was said, in the *Quayle* case, that "in that statute the Legislature has defined for the future the public policy of the State. Its power there is not open to challenge. The right of a public official to recover from the city the full salary attached to the office is made subject to the condition that a claim against the city for such salary must be asserted promptly in the manner provided by the Legislature" (p. 24). There was no decision or intimation in those cases that the Legislature had any power to declare a public policy

contrary to and in direct collision with the public policy of the State declared in the Constitution. In *Albert* v. *City of New York* (250 App. Div. 555; affd. without opinion, 275 N. Y. 484) it was held that the salary of the plaintiff was legally fixed by the Board of Aldermen by authority of the Legislature of the State prior to the time that plaintiff took office since the duties he performed did not bring him within the exception from the salary reduction provision of the Economy Act and that such salary should continue to be the salary to which the plaintiff was entitled and could not be reduced during his term of office. Since it appeared as a fact in that case that the plaintiff had accepted the reduced amount under protest as required by the charter provision and the constitutionality thereof was not raised, its constitutionality was not considered. For the same reason, the constitutionality of the act was not raised in the *Hanley* case (*supra*). In both cases it was specifically held, and the holding was necessary for and the basis of the decision in this court, that a constitutional State officer must be paid the salary which was legally in effect at the time he took office during the term for which he was elected or appointed.

In the case at bar the respondent challenges the power of the Legislature to attach conditions, restrictions or qualifications to the constitutional right of plaintiff to receive, during his term of office, the salary fixed by law and legally in effect at the time he was elected and took office as County Clerk and Sheriff respectively. We are now first called upon to determine the question of whether the attaching of such conditions and restrictions by the Legislature effects or may effect a reduction of salary. The question propounded is one of power. Its solution does not depend on what the Legislature purposed or intended. The legal effect of the statute (§ 149), however, must be considered. We have stated in the *Quayle* case (*supra*) the effect of the legislative enactment. There we said: " By the statute the Legislature has decreed that regardless of intention of the parties or general principles of contract, waiver or estoppel, failure to make timely protest shall bar recovery " (p. 24). Except

for the statute, we said, " acceptance by a public officer of an amount less than the salary fixed by law does not, upon any principle of waiver, estoppel or accord and satisfaction, bar recovery of the full salary" (p. 22). All parties are agreed as to the compulsory nature of the statute. By its express terms, failure to sign the receipt for the reduced salary under protest in writing on the face of the payroll " shall be deemed to have made an accord and satisfaction of all claims against the city for wages or salary due." Thus a statutory and compulsory accord and satisfaction is established, in effect for all purposes a reduction of salary by legislative fiat in spite of the constitutional provision that it cannot be done. Appellant takes the position that plaintiff *can be compelled* to serve at the reduced salary if he fails to comply with the terms of the statute. Construing the constitutional provision, modified in terms and effect as it would like to have it, the defendant says in its brief here that " the thing protected by the Constitution was the amount of salary fixed for the office, *as limited and qualified by the requirement that signature under protest be noted upon the payrolls* " (Italics ours). The salary of the officer is as effectively reduced by the statute as though the Legislature had spoken to that effect in express terms. There is nothing ambiguous or obscure in the constitutional provision. Its purpose and meaning are clear. Its purpose was to prohibit absolutely any increase or reduction in the salary of a constitutional State officer during the term of office for which he was appointed or elected, to prohibit the State government or any of its subdivisions or agencies, either by direction or indirection, to accomplish or make possible any such result. That purpose and intent cannot be frustrated by words, by the turn of a phrase, by act of the Legislature, or by judicial construction nor subverted or overthrown by indirection. Embracing, as it does, the whole right of respondent to receive his salary as fixed by law unhampered by policy or conditions other than those implicit in its express provisions and with a specific inhibition against its reduction during his term of office, no permission can be

found in the constitutional provision or warranted by implication to the Legislature to effect a reduction of salary as a penalty for failure of the plaintiff to comply with a legislative condition precedent to receiving the whole or some specific part of it. The Constitution limits the power of the Legislature to the fixing of the salary to be paid. It directs the Legislature to exercise that power without qualification or condition. From such a positive direction, the implication necessarily follows that it forbade the Legislature to do anything contrary to the direction or attach any condition or qualification that would frustrate its purpose (*People ex rel. Wood* v. *Draper,* 15 N. Y. 532, 544; *People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50). Authoritatively, Judge ALLEN restated and laid down the principles applicable to such an effort to subvert and frustrate a clearly stated constitutional purpose and to asserted legislative power as against higher constitutional authority in *People ex rel. Bolton* v. *Albertson* (*supra*) at page 55 where he said, among other things: " A written Constitution must be interpreted and effect given to it as the paramount law of the land, equally obligatory upon the legislature as upon other departments of government and individual citizens, according to its spirit and the intent of its framers, as indicated by its terms. An act violating the true intent and meaning of the instrument, although not within the letter, is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden. A thing within the intent of a Constitution or statutory enactment is, for all purposes, to be regarded as within the words and terms of the law. A written Constitution would be of little avail as a practical and useful restraint upon the different departments of government, if a literal reading only was to be given it, to the exclusion of all necessary implication, and the clear intent ignored, and slight evasions or acts, palpably in evasion of its spirit, should be

sustained as not repugnant to it. The restraints of the Constitution upon the several departments, among which the various powers of government are distributed, cannot be lessened or diminished by inference and implication; and usurpations of power, or the exercise of power in disregard of the express provision or plain intent of the instrument, as necessarily implied from all its terms, cannot be sustained under the pretence of a liberal or enlightened interpretation, or in deference to the judgment of the legislature, or some supposed necessity, the result of a changed condition of affairs. (1 Kent's Com. 162; *Barto* v. *Himrod,* 4 Seld. 483; *Taylor* v. *Porter,* 4 Hill, 144; *Warner* v. *People,* 2 Den. 272; *People* v. *N. Y. C. R. R. Co.,* 24 N. Y. 485; *Schenectady Observatory* v. *Allen,* 42 id. 404.) "

Nevertheless, it is asserted that the enactment of section 149 was a constitutional exercise of power since it might be construed as an administrative provision for the benefit or convenience or safeguarding of the city or as a matter of public policy compelling compliance. Any expression found in other cases that a public officer might effect a waiver of his rights by failure to sign the payroll under protest as a matter purely of administrative procedure has no application to officers protected by the Constitution against reduction of salary. We are not dealing with the question of reasonableness of the legislative provision. We are not here interested in the equities. " We are not dealing with policy, expediency or convenience as viewed by the Legislature." It was not a personal privilege merely to receive the salary as fixed. It was a substantial and fundamental right. It did not partake solely of a personal interest. The constitutional provision was in the public interest as well. The policy of the State and the purpose of the enactment of the constitutional provision were specifically declared. As to those, the Constitution spoke with commanding authority (*People ex rel. Battista* v. *Christian,* 249 N. Y. 314; see *Judd* v. *Board of Education,* 278 N. Y. 200).

No defense of waiver has any application in this case. Waiver is the " voluntary and intentional relinquishment

or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed " (67 C. J., p. 289). The right of plaintiff to receive the salary as claimed by him was fixed by the Constitution. In no manner is it asserted or can it be claimed that plaintiff abandoned the right guaranteed him by the Constitution, the right to receive the salary legally attaching to the office without diminution during the terms for which he was elected as County Clerk or Sheriff. At any event, the doctrine of waiver or estoppel has no application here (*Matter of Sullivan* v. *Taylor,* 279 N. Y. 364, 370).

The constitutional provision upon which plaintiff relies first became a part of the Constitution in 1874. It was readopted by the People in 1894 and in 1938. It is significant to note that the proposed method to circumvent the constitutional requirement was not adopted by the Legislature until 1912 (L. 1912, ch. 398), and then only in so far as it affected constitutional State employees within the city of New York and was not sought to be taken advantage of by that city until 1933. More significant still was the assertion of the appellant in this court in the *Quayle* case that there may have been a contravention of the constitutional provision by the city's effort to reduce Quayle's salary *during* his term of office and therefore no " persistent objections " should be made to the decision of the lower court against it in that respect.

The judgment should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, FINCH and LEWIS, JJ., concur with SEARS, J.; RIPPEY, J., dissents in opinion, in which CONWAY, J., concurs.

Judgment reversed, etc.