In the Matter of Felix C. Benvenga et al., Petitioners, against Fiorello H. La Guardia, as Mayor of the City of New York, et al., Constituting the Board of Estimate of the City of New York, Respondents.

Supreme Term, Special Term, New York County, May 3, 1944.

*John W. Davis* for petitioners.

*Ignatius M. Wilkinson, Corporation Counsel (William S. Leb-wohl* and *Harold S. Singer* of counsel), for respondents.

WASSERVOGEL, J.    Seventeen justices of the Supreme Court, nine residing in the first judicial district and eight in the second judicial district, have brought this proceeding under article 78 of the Civil Practice Act to compel the respondents, constituting the Board of Estimate of the City of New York, to pay to them their several claims for salary withheld from them by respondents, and hereafter to pay to each of them the same compensation which is paid to other justices of the Supreme Court resident in the first and second judicial districts.

The parties are in substantial accord on the facts.

Under authority granted by the State, the City of New York, since the year 1852, has been paying to justices of the Supreme Court resident in the first and second judicial districts an annual compensation in addition to that paid by the State to all justices of the court.    From 1909 to 1930 the amount so paid by the

City was $7,500 per annum to each resident justice. This amount was increased in June, 1930, to $10,000 per annum for each such justice.

On November 2, 1939, the Board of Estimate of the City adopted a resolution purporting to reduce from $10,000 to $7,500 the amount which the City would pay to justices " hereafter elected or appointed, including those elected upon the expiration of their present terms of office ". The Board adopted a further resolution on January 16, 1941, which stated that the resolution of November 2, 1939, " shall not apply to Justices of the Supreme Court assigned to the Appellate Divisions of the First and Second Judicial Districts during the period of such assignment ". Another resolution was passed, effective July 1, 1942, which provided that the reduction in salaries of the justices should not apply to any justices who occupied the office by election on July 1, 1939, even though such justices may have been elected after November 2, 1939. These provisions affecting Supreme Court justices in the first and second judicial districts have been continued in force by resolution of the Board of Estimate and have been included in the budget for the fiscal year 1943–1944.

The Board of Estimate, pursuant to the resolution of November 2, 1939, has paid to the petitioners additional compensation at the rate of $7,500 per year instead of the sum of $10,000 paid during the same period to other justices not within the classification prescribed in the resolution. These payments have been received at the times, in the amounts and under the protests noted in the petition. During the same time the Board of Estimate under the resolution effective July 1, 1942, has also paid to certain justices, resident in the first and second districts and elected or re-elected after November 2, 1939, the sum of $10,000 per year.

It further appears that the Board of Estimate has fixed the compensation of judges of the Court of General Sessions, the judges of the county courts and of the surrogates of the counties of New York, Bronx, Kings and Queens at the same total compensation then awarded to justices of the Supreme Court resident in the first and second judicial districts, namely, the sum of $25,000 per year; and that although the terms of the aforesaid resolution of November 2, 1939, provided that the compensation to be paid to judges or surrogates thereafter elected or appointed should be reduced by the sum of $2,500, certain of the said judges and surrogates elected or re-elected after November 2, 1939, have nevertheless continued to receive total

compensation at the rate of $25,000 per year and the surrogates of New York, Bronx, Kings and Queens Counties have been and are receiving total compensation in the same amount of $25,000 per year.

The petitioners contend that the action of the Board of Estimate is illegal for the following reasons:

1. The reduction is not authorized by section 143 of the Judiciary Law, which is the only provision of law put forward as authority for the reduction.

2. The reduction is prohibited by the provisions of law which now appear in section 142 of the Judiciary Law.

3. The reduction violates the provision for continuing equalization as between justices and surrogates, which is expressly provided for in the provisions of law which now appear in section 178 of the Judiciary Law.

4. The reduction as construed and applied by the Board of Estimate is arbitrary and capricious and not according to a fixed and prescribed standard, and hence is not " established by law ", as required by section 19 of article VI of the State Constitution, and denies the equal protection of the laws in violation of section 11 of article I of the State Constitution.

On the other hand, the respondents contend: (1) the provisions of section 143 of the Judiciary Law confer upon the City the power to reduce, as well as increase, the additional compensation payable to justices; and (2) the classifications set up by the three resolutions are reasonable, equitable and valid in all respects. The respondents also urge as affirmative defenses: (1) that as to all payments which have been made and are to be made up to July 1, 1944, the Statute of Limitations constitutes a bar to any recovery by any of the petitioners; and (2) that under no circumstances may Mr. Justice NULL, one of the petitioners, recover for any payments made before January 1, 1944, because he accepted such payments without noting any protest on the payroll sheets.

In substance, the main question thus presented in this proceeding is whether the Board of Estimate had the power to create two classes of justices of the Supreme Court, each class to receive a different salary.

Section 143 of the Judiciary Law provides as follows: " The board of estimate of the city of New York may provide for the raising by tax, and for payment to the justices of the supreme court resident in the first and second judicial districts, to the judges of the court of general sessions of the county of New York, to the surrogates and to the judges of the county courts

of the counties within the city of New York, or to the justices, judges or surrogates of any of such courts, of such additional compensation as such board may deem proper. No increase, pursuant to this section in the total salary and compensation of the justices, judges or surrogates of any such court or courts over the salary and compensation received by them in the year nineteen hundred and twenty-seven, shall require or effect an increase of the salary or compensation of the justices, judges or surrogate of any other of said courts, unless the board of estimate shall so provide, any other statute to the contrary notwithstanding.''

Justices of the Supreme Court are State officers and their salaries can be regulated only by the Legislature, which can, however, confer certain authority with respect thereto upon local bodies. We need not be concerned in the determination of this proceeding with the basic power of the Legislature to effect reasonable classifications of justices. Our problem is simply to determine the extent of the authority delegated by the State Legislature to the City in the enactment of section 143; that section states that the City '' may provide '' additional compensation for Supreme Court justices resident in the first and second judicial districts and to judges of certain other courts, '' or to the justices, judges or surrogates of any of such courts ''. No distinction is created by its language between justices or judges of any one of the particular courts specified. In each instance, the justices or judges of the specified court are referred to collectively and the conclusion is compelling that the additional compensation thus provided attaches to the office and not to the particular incumbents.

The respondents contend that the grant of authority contained in section 143, to provide additional compensation, includes the right to increase or decrease such compensation from time to time, even though such action results in justices of the same court receiving different salaries. It urges that it is given the right to classify justices of a particular court upon the basis of the time of their appointment or election. No express or implied delegation of such rights is found in the language of the statute. Nor can the interpolation of such rights be justified by principle or precedent.

Certainly it is repugnant to sound principles of judicial administration to have justices performing the same functions and carrying the same responsibilities receiving different compensation.

It has been held under comparable statutes in other states that the local body has no authority to reduce a compensation once fixed. (*Freeney* v. *Brown,* 182 Ga. 818; *Petition of Breidenbach,* 214 Wis. 54.) The respondents advance the case of *Matter of Abrams* v. *LaGuardia* (287 N. Y. 717) as authority for their right to reduce in 1939 the compensation fixed in 1930 for justices resident in the first and second districts. That case, however, related only to justices and clerks of the Municipal Court of the City of New York, which is not a constitutional court, and thus the salaries of its justices were subject to reduction during their terms of office by appropriate legislative action. Moreover, the authority for the Board's action in the *Abrams* case (*supra*) did not stem from section 143 of the Judiciary Law, but was contained in a separate enactment of the Legislature (L. 1927, ch. 506) specifically relating to the Municipal Court only and by its express terms applicable to justices of that court then in office. All of the justices of that court were subjected to the same reduction and no discrimination between them was made.

Petitioners contend that section 142 of the Judiciary Law further limits the scope of the respondents' authority under section 143. The pertinent parts of section 142 are as follows: " * * * Those justices elected in the first and second judicial departments shall continue to receive from their respective cities * * * as now provided by law, such additional compensation as they are now receiving therefrom. * * * The provisions of this section shall apply to justices now in office and to those hereafter elected or appointed."

The dominant note prevailing in this section is that there be no reduction in the compensation to justices resident in the first and second judicial districts and that there be a continuing equality between justices then in office and all those thereafter elected. Section 143 of the Judiciary Law was enacted two years later. Pursuant to the authority contained therein, the City in June, 1930, fixed its compensation to justices in the first and second judicial districts at $10,000. It thereupon became obligated by the provisions of section 142 to make such compensation applicable to all justices regardless of the time of their appointment or election. To accept the respondents' contrary interpretation would be to sanction an authority to create innumerable classifications of justices based on varying dates of appointment or election.

Indicative of the caprice with which the right of classification urged by the City may be exercised is the situation with

respect to the compensation paid to surrogates. Section 178 of the Judiciary Law provides that the Surrogates of the Counties of New York, Kings, Bronx and Queens shall receive the same aggregate compensation as that paid to justices resident in the first and second districts and further directs a continuing equalization of compensation paid to such justices and to such surrogates. The language clearly contemplates a uniform salary for justices at all times. Peculiarly, the City has nevertheless created a distinction between justices of the Supreme Court, based on whether their appointment or election was prior or subsequent to November 2, 1939, and has equalized the compensation of surrogates elected subsequent to November 2, 1939, with that of justices of the Supreme Court appointed or elected prior to that date.

The legislative program embodied in sections 142, 143 and 178 of the Judiciary Law, enacted pursuant to the constitutional revision of 1925, clearly did not contemplate any distinction in compensation payable by the City to justices resident in the first and second districts, based on the time of their appointment or election. No express or implied power to effectuate such distinction was granted to the City by these laws. The resolution of November 2, 1939, adopted by the respondents, is wrong in principle and contrary to the letter and spirit of the applicable laws. It is neither reasonable nor equitable and constitutes discriminatory legislation. I declare it to be invalid and void.

As " a separate and partial affirmative defense ", however, respondents in their answer allege that " more than four months had elapsed at the institution of this proceeding since the determination of the Board of Estimate, here sought to be reviewed, to pay each of these petitioners additional compensation at the rate of $7,500. per annum ". The answer concedes that on December 20, 1943, a written demand for the payment of the moneys sought by petitioners in this proceeding was made in the form of Exhibit A, annexed to the petition. The motion papers were served on April 13, 1944. By failure to deny the allegations of paragraphs 35 and 36 of the petition, respondents concede that they failed and refused to comply with the demand and that less than four months had elapsed since such refusal.

It is nevertheless the contention of the respondents that the Statute of Limitations bars any recovery for petitioners for any period prior to July 1, 1944, and that this proceeding should have been instituted within four months after the resolutions of the Board of Estimate here involved were adopted. The authority

relied on is section 1286 of the Civil Practice Act, which provides that a proceeding under article 78 " *   *   * to review a determination or to compel performance of a duty specifically enjoined by law, must be instituted *   *   * within four months after the determination to be reviewed becomes final and binding, *   *   * or after the respondent's refusal, upon the demand of the petitioner or the person whom he represents, to perform his duty, as the case may be;   *   *   *.''

This proceeding is not to "review a determination", but " to compel the performance of a duty specifically enjoined by law ", as these terms are defined in section 1284 of the Civil Practice Act. The provisions of the Judiciary Law vested no discretion in respondents to rescind or to reduce the compensation payable to justices resident in the first and second judicial districts once the compensation was fixed and granted. The failure to pay petitioners the same compensation paid to other justices in the first and second judicial districts was a dereliction of their duty and the Statute of Limitations does not run against petitioners until four months have elapsed after the refusal of respondents to perform their duty upon demand of the petitioners. The petition is timely.

The second partial defense addressed only to the claims of Mr. Justice NULL for the period prior to January 1, 1944, is valid. (*Finn* v. *City of New York,* 282 N. Y. 153.)

The application of petitioners is granted to the following extent: They are entitled (a) to the payment by respondents to each of them of salary at the rate of $10,000 per annum; (b) to the payment of the difference between such rate and the amount paid to each of them from the commencement of his service as a justice of the Supreme Court, except that with respect to Mr. Justice NULL, such computation is to be made from January 1, 1944, inasmuch as he did not make written protest to the acceptance of the amount paid to him prior to said date, as required by law.

Settle order.