**DENDRINOS et al. v. CITY OF NEW YORK.**

United States District Court
S. D. New York.

June 27, 1949.

William L. Standard, New York City, proctor for libelants.

John P. McGrath, Corporation Counsel, New York City, proctor for respondent. Joseph T. Caponigri, William E. Walsh and Helen R. Cassidy, New York City, of counsel.

RYAN, District Judge.

Libelants sue pursuant to Sections 596, 597, 46 U.S.C.A., to recover wages for

extra work performed aboard respondent's vessel in excess of their regular working hours.

For the purposes of this pre-trial hearing wherein we are asked to determine certain preliminary questions of law the following facts have been stipulated:

Libelants were employed as oilers by the City of New York, Department of Public Works, aboard the sludge vessel M. V. Coney Island. The work of the vessel consisted of carrying sludge and waste from the sewage disposal plants of the City, out of New York Harbor to a dumping ground about 10 miles out to sea—half of the work being carried on within the waters of the harbor and the other half in the open waters outside. Libelants were certificated seamen; they aided in the operation and navigation of the vessel and were employees of the City, being paid at an annual rate, bi-monthly. During the period 1944-45 they performed extra work aboard the vessel, and during this time they accepted their regular fixed wages and signed the bi-monthly payrolls without protest although they were not receiving payment for the extra hours of work. Libelants contend that in response to their request for overtime they received promises of additional compensation or "time-off" (although it does not appear by whom such promises were in fact made). It is not disputed that during these years they received neither additional compensation nor time off for the extra work. Both prior to 1944 and subsequent to 1945, libelants were compensated for extra work performed at these times by receiving time off with pay. The extra work here involved consisted of the performance of routine duties aboard the vessel; it was not of an extraordinary nature or incidental to an emergency.

■ Libelants rely on Sections 596, 597, which provide for the payment of wages to a seaman and contain the further provision that if such wages are wrongfully and without sufficient cause withheld from him he shall be entitled to recover a sum equal to two days' pay for each and every day during which payment is delayed. To come within these provisions libelants must establish that they are seamen, that they are entitled to payment for extra work and that respondent, The City of New York, has wrongfully and without sufficient cause withheld such payment.

■ Libelants' labor contributed to the accomplishment of the activity in which the vessel was engaged—the business of the municipality. The vessel was a necessary implement in carrying out a municipal function vital to the well-being, health and safety of the inhabitants of the City. It matters not that it was not engaged in carrying on the business of a private enterprise; or that libelants did not sign shipping articles and that they were Civil Service employees boarding and living at home, being paid a regular annual salary and receiving vacation and pension benefits as any other city employee. Libelants were seamen and come within the present liberal definition of seamen. Saylor v. Taylor, 4 Cir., 77 F. 476. Their rights as such are therefore to be governed by federal statute and not by local law. Pariser v City of New York, 2 Cir., 1945, 146 F.2d 431. This apparently is specifically recognized in Special Order No. 234 of the Department of Public Works of the City of New York (Ex. "A" annexed to the stipulation of facts), by which department libelants were employed.

■ There is no statute which provides for the payment of overtime wages to seamen in absence of contract. The law merely sets forth the rights of a seaman to collect the wages due him for work aboard a vessel within two days after the termination of the agreement under which he was shipped, or at the time of his discharge. Sec. 596. By the express words "termination of the agreement" the statute limits recovery to such wages as have been contracted for between the seaman and the owner of the vessel. Libelants do not allege any such express contract providing for overtime wages and none appears either in the pleadings or the stipulated facts. They do vaguely state that they were promised either equivalent time off or payment for the extra work performed. However, it may be established that under the circumstances a contract might be implied

in fact. This will have to be determined on the trial.

■ There appears here a substantial question of law as to whether libelants are entitled to payment for extra hours of work. It cannot therefore be said that respondent has wrongfully and without sufficient cause withheld such payment. The punitive provisions of Section 596 cannot in this case be invoked against respondent.

There remains for consideration one further question of law.

■ During 1944 and 1945, when they performed this extra work, libelants were paid and they accepted their usual, fixed bi-monthly salaries. They signed the payroll without protest acknowledging receipt of these payments. As a matter of law receipt of these payments not under protest would not constitute a release of any claim which as seamen they might have. Gahagan Const. Corporation v. Armao, 1 Cir., 165 F.2d 301, certiorari denied 333 U.S. 876, 68 S.Ct. 905, 92 L.Ed. 1152; Garrett v. Moore-McCormack Lines, Inc., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239. It is, however, potent evidence that such payment was in full under the terms of their employment by the City. It would require considerable evidence to persuade that libelants did not know that when they signed the payroll without protest they were giving up all claim or right to additional pay for the period during which they were being regularly paid. It is only reasonable to assume that they must have inquired as to what provision was being made for compensating them for their extra hours of work when their vouchers did not include such payment. The signing without protest places upon them a very heavy burden of proving that these receipts were not in full accord and satisfaction of their claims. See: Administrative Code of the City of New York, Sec. 93c—2.0; Shevlin v. La Guardia, 279 N.Y. 649, 18 N.E.2d 43; Rushford v. La-Guardia, 280 N.Y. 217, 20 N.E.2d 547; Finn v. City of New York, 282 N.Y. 153, 25 N.E.2d 966, 127 A.L.R. 522. This is also an issue to be determined on the trial.