Francisco **RODRIGUEZ**, Libelant,

v.

**GERONTAS COMPANIA DE NAVEGA-CION, S.A., and THE SS GERONTAS,** her engines, tackle, boilers, etc., Respondents.

United States District Court
S. D. New York.

April 25, 1957.

Lebovici & Safir, New York City, for libelant, Herbert Lebovici, New York City, of counsel.

Frederick H. Cunningham, New York City, for respondent, Victor S. Cichanowicz, New York City, of counsel.

DAWSON, District Judge.

This is an action tried by the Court without a jury. The libelant claims damages for an injury sustained by him on the SS Gerontas, a ship owned and operated by the corporate respondent, and also seeks to recover additional pay or compensation under the provisions of the Panamanian Labor Code. The libelant, who is 43 years old, was engaged at the port of Newport News, Virginia, on October 6, 1952 to serve as an assistant steward aboard the Panamanian flag steamship SS Gerontas, owned by the respondent Gerontas Compania de Navegacion, S. A. Libelant continued to serve aboard such vessel from October 6, 1952 to June 23, 1955.

### The Injury to the Libelant

Some twenty years prior to his service aboard the SS Gerontas, libelant suffered an injury to his right hip in an automobile accident in Spain, the country of which he is still a citizen; as a result of this accident libelant's right hip joint became badly crippled. His right femur was thrust up into the pelvic joint with areas of destruction involving the head of the right femur and the adjacent acetabulum. The right hip joint became ankylosed or "frozen." This resulted in a shortening of his right leg and a lack of motion in his right hip. As a consequence libelant walked with a limp. Nevertheless, libelant succeeded in getting around and performing work without too much difficulty. During the Spanish Civil War libelant served as an infantryman for approximately eight months and thereafter for about two years as a truck driver. After the war he went to sea on various ships, serving as coal passer, fireman, able-bodied seaman and steward.

On February 7, 1955, while libelant was engaged in the performance of his

duties as assistant steward aboard the SS Gerontas, he slipped and fell in the pantry of the vessel. The fall suffered by the libelant was proximately caused by the slippery condition of the floor in the pantry. A fracture in the ship's port bulkhead permitted water to leak from the deck on to the pantry floor which thus became slippery. Libelant laid up from work for some two to four days and then resumed his duties. Libelant did not suffer any fracture or dislocation as a result of his fall on board the vessel. The medical testimony was conflicting but the Court, after hearing the testimony and examining the x-rays, concludes (1) that as a result of the accident on board the SS Gerontas libelant received contusions to his hip, (2) that these contusions loosened the fusion in the previously frozen hip joint because the fusion was fibrous instead of bony, and (3) that resulting motion in the hip joint became painful. In other words, the frozen hip became unfrozen and that which previously had been pain-free because of its frozen condition began to cause pain on motion of the hip joint.

About four days after this accident the ship arrived at Sidney, Nova Scotia. Libelant did not secure any treatment by a physician. Although the vessel was in port for six or seven days and other crew members were sent to the doctor and means of transportation, an automobile of the vessel's agent at the port, was furnished them libelant did not obtain treatment by a doctor. There is a sharp dispute in the testimony as to whether Rodriguez requested treatment. In any event libelant continued on the vessel and performed his duties.

Thereafter, and after a stay of several hours at Halifax, the vessel proceeded to Mazatlan, Mexico. There the libelant daily visited a doctor during the vessel's ten-day stay, but received treatment not for his leg but for a stomach condition of which he complained. There is no indication that if he had sought treatment for his leg Rodriguez would have been unable to receive it. After leaving Mazatlan the vessel proceeded to San Pedro, California. At this port, at libelant's request, he was seen by a doctor who came aboard for the purpose of examining another crew member who was ill. This doctor furnished some medication and advised libelant that he was probably suffering from an arthritic condition of his hip and suggested x-rays at Vancouver, the next port of call. On the vessel's arrival at Vancouver, libelant was examined by a doctor. The doctor told libelant that a proper cure would require a considerable period of hospitalization for an operation. The master of the vessel advised libelant that if he wished to stay at Vancouver he could do so and that the master would discharge him so that he could have the operation in Vancouver, or get any other treatment he desired. Libelant, however, informed the master that he was able to perform his duties and would prefer to remain with the vessel until it returned to New York so that he could get treatment there. Libelant then remained on the vessel and continued to perform his duties until the arrival of the vessel in New York on June 23, 1955.

On June 28, 1955 libelant was admitted to the Westchester Square Hospital where he remained a patient until July 14, 1955, when he was discharged. X-rays were taken at the hospital and the libelant received physiotherapy treatments. As of July 1, 1955 the hospital physician stated that although pain might continue the libelant would be able to do his former work. Libelant did not return to sea or make any immediate attempt to get employment. Instead he went to work at a hotel on November 19, 1955 and worked there steadily since that date, working ten hours a day, with the exception of approximately two weeks in May, 1956 when he was hospitalized in St. Vincent's Hospital for treatment to his eyes. Libelant obtained no further treatment for his right hip after discharge from the Westchester Square Hospital although he has been a charity patient in St. Vincent's Hospital for treatment for his eyes not only in

May 1956 but also for a period of six weeks in September and October 1955. Libelant's work at the hotel is light in nature being essentially that of a door-man, desk clerk and night watchman. For this work he receives a room of the reasonable value of $10.50 per week and approximately $24.50 per week in addition.

Libelant now walks with a noticeable limp and contends that his hip is painful to him, and that he cannot return to duties at sea. His right leg has a marked shortening. This shortening, however, does not appear to have been the result of any physical injury to the skeletal structure of the leg but rather is a functional shortening which results from the way in which the leg is held, which in turn results from the pain of the partly unfrozen hip joint.

■ The Court is convinced that the present derangement of Rodriguez' hip is only partly the responsibility of the ship. As a result of the unseaworthy condition of the pantry, libelant fell and aggravated a previous injury. Respondent, consequently, is liable for this aggravation. That this has resulted in a painful condition of the leg seems to be without dispute. However, it was not so painful as to prevent libelant from performing his duties in the hotel by which he has been employed for many months. A complete revision of the hip might be effected by an expensive and protracted operation. Libelant has shown no desire or willingness to undergo such an operation, nor has he made any demand upon respondent to have such an operation.

### Libelant's Claim for Personal Injury

The Labor Code of Panama, which is applicable to a consideration of the rights and remedies of libelant, provides that a worker may recover compensation for any "working accident" which is defined as "every bodily injury which the worker may suffer on occasion of or as a consequence of the work he carried out. * * *" Art. 208. These Code provisions are essentially similar to a workmen's compensation law. They give the worker an absolute right of recovery, irrespective of negligence, but at the same time fix the amount of the recovery.

Article 210 of the Labor Code provides that where the consequences of the accident are aggravated by an illness or injury which the worker may have had prior to the accident, "such aggravation shall be considered, for the effects of the indemnity, as a direct result of the professional risk that has occurred and an indirect result of the illness or injury."

Indemnity is provided by the provisions of the Labor Code. The worker is entitled to indemnity for a working accident equal to his salary for the first two months of his "disability" plus a sum equal to 50%· of his salary for the following ten months "if the injured party should continue disabled for all this time. * * *" Art. 218. In the case of partial permanent disability the worker is entitled to an income for three years fixed on the basis of his annual salary but determined according to the percentages of disability as provided under Article 222 of the Labor Code. Art. 218.

Libelant's salary at the latter part of his service was £30 a month. He also received his room and board on the ship which, under the provisions of § 183 of the Labor Code, must be valued at 50% of the salary which the worker was receiving in cash. Therefore the salary of libelant must be computed on the basis of £45 a month. It was stipulated that the Court should accept the valuation of $2.80 for the pound. Therefore the salary of libelant was at the rate of $126.00 a month, or, on the basis of a 30-day month, at the rate of $4.20 per day.

Libelant's period of total disability was from June 23, 1955 (the date of his discharge from the vessel) to July 14, 1955 (when he was discharged from the Westchester Square Hospital as able to return to work). This constituted 20 days of total disability for which he is entitled to $84.

In addition libelant has had a permanent partial disability which his physician estimated at 80% of the use of his leg. Under Article 222 of the Labor Code the total loss of use of the leg would entitle the worker to an amount equal to 75% of his salary for three years, but this sum is to be reduced by the percentage of disability. Therefore libelant would be entitled to 80%· of 75% of his salary for up to three years. This amounts to $75 a month for the period from July 14, 1955 to the date of trial, or twenty months, which equals $1,500. Or, if we consider that the permanent partial disability will continue, libelant is limited under the Labor Code to a maximum of three years in computing the indemnity he is to receive. This would mean that he is to receive $75 x 36, or $2,700.

■ Libelant while asserting rights under the Labor Code, claims that he is not limited to the recovery provided therein, but may also recover, on the basis of negligence or unseaworthiness, his full damages which would include a recovery for pain and suffering. Libelant urges that an injured Panamanian seaman may recover either under the Labor Code or under the Civil Code. The abstract from the Civil Code introduced in evidence provides as follows:

"Anyone who by act or omission causes damage to another person for guilt or negligence is obliged to repair the damage caused." Art. 1644.

This provision was referred to by libelant's expert on Panamanian law as the basis for his conclusion that full compensatory damages can be recovered for unseaworthiness or negligence of the respondent. Libelant's expert witness, while certain of his conclusion, was unable to refer to a specific statutory provision explicitly substantiating his conclusion. He also expressed his inability to refer to any case decided by the Panamanian courts; nor was he able to cite a treatise, although he did testify that the principal authors recognized as authorities on the civil law supported his position. Apparently no reports of Panamanian cases are kept comparable to those found in common law jurisdictions. In this situation the opinion expressed by libelant's expert witness was traced to the only authorities available to him. Furthermore, on cross-examination respondent was unable to shake the expert's testimony that Panamanian law authorized a recovery for all lost wages, future as well as past, as well as pain and suffering, and that the remedies under the Labor Code are not exclusive so as to preclude recovery under the general provisions of Article 1644 of the Civil Code. Indeed respondent, although the opportunity existed, failed to produce an expert witness to controvert the above testimony.

While the parties have been unable to refer the Court to a case in which this issue has been litigated, it appears that in a recent Fourth Circuit decision the law of Argentina, as found by the court, coincides with the exposition of Panamanian law here rendered by libelant's expert. See Fletero v. Arias, 4 Cir., 206 F.2d 267, certiorari denied, 1953, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398. It was there held, under the law of the Argentine, that workmen's compensation was not the only remedy available to an injured seaman, for he could, on the basis of unseaworthiness or negligence, recover under the Civil Code for his full damages.

Evaluating all the relevant evidence the Court concludes that libelant has established as a fact his right to recover full damages under the Civil Code of Panama. To fully compensate him for the injury sustained, libelant seeks damages for loss of wages, maintenance, and pain and suffering, in the future as well as in the past. Evaluating these elements of loss· in monetary terms, the Court awards libelant $5,000 in full satisfaction of his claim.

■ Contrary to his contention, libelant's damages should not include anything for medical treatment. This is so even though Article 238 of the Labor Code requires an employer to provide

medical and hospital care for the injured workman "until his death or complete recovery, or until by medical certificate he is declared permanently disabled. * * *" Libelant contends that for complete recovery he would need an operation on his hip to fuse the hip joint. Medical experts testified that this would require a long period of hospitalization and would cost about $2,000 and the success of such an operation would be by no means assured. All medical expenses of libelant to date have been paid by the respondent. Libelant was given an opportunity to remain in Vancouver to have an operation but elected not to have the operation but rather to return to New York. There was no proof that libelant at any time thereafter sought to have an operation or demanded that the respondent pay for an operation. In fact during his two stays in St. Vincent's Hospital (where he was treated for trouble with his eyes) libelant did not ask for any medical attention to his hip. The fundamental injury to libelant's hip is of such long standing that the doctors were agreed that an operation might be a drastic remedy and that conservative treatment would probably be the preferable form of treatment. In the absence of any proof that libelant has undergone an operation, or intends to undergo an operation, or has demanded an operation, there is no legal basis for assessing against the respondent the cost of a hypothetical operation which libelant may never undergo. The Court has concluded from the testimony that the injury to the libelant creates a permanent partial disability and is allowing a recovery to him on this basis. Any further obligation of the respondent for medical treatment becomes terminated when libelant is declared permanently disabled and seeks and secures an award on this basis.

### Claim of the Libelant for Overtime Pay and for Vacation Pay

In addition to libelant's cause of action for the accident on the ship he also asserts a cause of action for additional wages under the provisions of the Panama Labor Code and for penalties for withheld wages under §§ 596 and 597 of Title 46 U.S.C.A.

Libelant contends that he is entitled under the Panama Labor Code to receive (1) vacation pay, (2) overtime pay for Sundays and national holidays, and (3) other overtime. These claims will be treated in order.

(1) *Vacation Pay.* The Labor Code of Panama provides in Article 170 that every worker is entitled to paid annual vacation, without prejudice to his weekly rest period, as follows:

"1.—Thirty days for each continuous eleven months of work, at the rate of one day for each eleven consecutive days of work at the service of his employer. The continuity of service is not interrupted by the weekly days of rest or national holidays nor by justified absences.

"2.—Payment of one month's salary when monthly pay was agreed upon, and of four and one-third weeks' pay when agreed on the weekly pay basis."

Respondent contends that libelant accepted employment on the ship at a stated monthly wage which was to include overtime and vacation pay and that therefore libelant is entitled to no additional vacation pay.

However, Article 172 of the Labor Code provides:

"Vacations shall be granted precisely for the worker to enjoy rest, and he shall not be permitted to renounce same in exchange for a pecuniary or economic compensation unless the Ministry of Labor so authorizes it after determining the convenience and necessity of such a change."

There was no evidence that the Ministry of Labor authorized the respondent in this case to agree to pay compensation in lieu of the vacation period. The Court concludes that libelant is entitled to vacation pay and that even if he had agreed that his basic pay was to include payment for vacation it would be inef-

fective to deprive him of his distinct right to a vacation as provided by the law. This vacation would be the equivalent of one month's salary for each continuous eleven months of work, or at the rate of one day for each eleven consecutive days of work. The Court finds that the vacation pay computation has been properly made by counsel for libelant and that libelant is entitled to $153.53 for vacation pay.

**(2)** *Overtime for Work on Sundays and National Holidays.* Libelant claims that he has not been compensated for all the holidays he worked while on board the Gerontas for two years and nine months. He relies upon the Panama Labor Code which requires payment at the rate of time and a half for work done on Sundays or national holidays.

Respondent asserts that the wage payments accepted by Rodriguez included a proper amount for holiday pay. The master of the ship testified that at the time libelant was hired it was agreed that the basic wage which he was to be paid covered his regular work, as well as services performed on Sundays and national holidays. The expert on Panama law called by the libelant admitted that such an agreement would have been valid. Libelant, however, denied any such understanding.

The Labor Code of Panama provides in great detail for the form and contents of agreements between employers and employees. Article 16 provides, with exceptions here not relevant, that all work contracts shall be written. Article 17 specifies that, among other information, the work contract shall contain the wage, salary or pay the worker shall receive and the manner and place where the respective payments shall be made. Under the Labor Code the employer bears the primary obligation to embody all agreements in written contracts. In the absence of a written agreement the employer is placed at a great disadvantage by the Code, which provides that the employee's version of their agreement shall be accepted:

"Article 19.—The non-existence of a written work contract as required by this Code will be blamed on the employer; and there shall be considered as true the fact or circumstances alleged by the worker, which should have been established in said contract."

To rebut this presumption by testimony of witnesses in the service of the employer, it is necessary that there be at least two, unless the trier of the fact is willing to accept the testimony of one witness as completely reliable:

"Article 20.—All means of proof may be admissible for destroying the foregoing presumption; but in the case of witnesses in the service of the interested party, there shall be required the concurrence of two agreed witnesses in regard to the essential points of the pact, or the testimony of one who, in the opinion of the judge, testifies with absolute sincerity and full knowledge of the facts."

As proof of the agreements between the parties, respondent offered photostats of two sets of Articles. The first, Exhibit E, bears the date April 1, 1953. By its terms Rodriguez was to receive £33 per month. This figure was preceded by the words "bonus and vacation" which apparently were included. The second set of Articles, dated May 31, 1954, reveals libelant's pay to be £24 per month. This figure was preceded by the words "vacation, Sundays and holidays," which were apparently included. Offered by libelant to contradict the pay rates specified in the Articles, are the wage account sheets, Exhibit 1. These indicate that the monthly basic wages of libelant were £33 from October 6, 1952 to September 17, 1953, £35 from September 18, 1953 to April 9, 1954, and £30 from April 10, 1954 to June 23, 1955.

The form of the wage account sheets substantiates libelant's contention that the pay he received did not include compensation for holiday work. On the top

part of the wage account sheets appears the employee's name, his pay scale and the period for which he is paid. Under these headings appear entries marked "Total Wages," "Deduction," "Net Wages," "Advances," "Balance Due," and "Plus Overtime." Thus on the first sheet dated December 17, 1952, libelant's pay scale of £33 is indicated by the words "Monthly Basic Wages." His "Total Wage" of £76.4.0 equals his "Monthly Basic Wages" for a period of two months and eleven days. Inserted before this figure of £76.4.0 appear the words "including bonus and vacation." These words appear on all eleven wage sheets as does the term "Monthly Basic Wages"; on the last wage sheet, however, the word "Basic" is crossed out.

Respondent asserts that the term "Monthly Basic Wages" includes holiday pay. Generally it is not in accordance with ordinary usage to include holiday pay compensation in base pay, or to include it in the term "bonus." Rather it appears that libelant was not paid for this extra labor, as no entry has been made on any of the sheets opposite the heading "Overtime." Furthermore, as proof of the agreement between the parties, the wage sheets are more persuasive evidence than the photostats of the Ship's Articles. Thus the wage account sheets indicate that libelant was actually paid "Monthly Basic Wages" of £30 a month at a time his total pay appearing on Exhibit F was £24.

Resolving the conflict in the testimony and exhibits, the Court concludes that libelant is entitled to recover overtime pay for Sundays and national holidays. Libelant's computation of this amount must be reduced, however, for two reasons: (1) it credits Rodriguez with eight hours labor for each Sunday, although the evidence establishes that he worked about only three hours; and (2) libelant's claim to a paid day off for each Sunday worked is not supported by Panamanian law as proved at trial.

For the period from October 6, 1952 to September 19, 1953, recovery is sought at the rate of £33 a month for 48 Sundays and 5 holidays. Calculating compensation for 53 full days at time and a half totals $422.94. The evidence, however, indicated that on Sundays libelant worked not a full shift but only three hours. Libelant, nevertheless, seeks compensation for a full day's work on each Sunday on the ground that he was available for eight hours' service. Reliance is placed on Title XIII of the Panamanian Labor Code which reads as follows:

"Article 154.—Effective work time is that during which the worker is under orders of the employer."

The application of this definition to seamen is limited by Article 161 envisioning the promulgation of regulations to cover employees engaged in the transportation industry:

"Article 161.—Details of the application of the foregoing articles to transportation and communications enterprises whose work is of special nature or continuous, shall be determined in regulations issued by the Executive Organ, which shall take into consideration the requirements of the service and the interests of both employers and employees, who shall be previously consulted."

No regulations issued pursuant to Article 161 have been introduced in evidence, nor has any testimony as to their effect been adduced. Accordingly libelant has failed to prove that Panamanian law requires that he receive overtime pay for Sunday work never in fact performed. Crediting Rodriguez with only three hours' work on Sunday reduces his claim for the first period to $185.34. From this amount must be subtracted $163.24 as libelant has conceded that he received ⅓₀th of his base pay for Sunday work. Accordingly, for the first 11 months and 11 days of his service on the SS Gerontas Rodriguez is entitled to recover $22.10. Similarly, for the period from September 18, 1953 to April 9, 1954, libelant's unpaid overtime is $18.83, and for the period from April 10, 1954 to June 23, 1955

is $8.24. Hence the unpaid total is $49.17.

(3) *Other Overtime.* Libelant urges that in addition to extra pay for work on Sundays and holidays he is entitled to damages because he did not get one day of rest a week. In other words, he wishes time and a half for work on a Sunday and then time and a quarter for work on a weekday which he asserts should have been given to him as a day of rest in lieu of the Sunday. This would mean that a seaman who worked the regular work week and also worked on Sunday would get not time and a half for working Sunday but two and three-quarter times his ordinary day's pay for working on that day.

There is no provision made for damages in the event a seaman is not given a day of rest, provided he gets his regular pay and that pay is computed at time and a half for work done on Sundays. The other provision for a day of rest each week is one which by statute regulates the rest periods to be allowed to employees; it is not a provision which automatically provides overtime if the rest period is not given. The law provides that failure to comply with the provisions of the Code for a day of rest in each week may be punished by fine. Art. 178.

No proof was given that under the laws of Panama a seaman who does not get his day of rest a week, but who is paid for work on Sunday, is entitled to additional compensation. Since libelant is to be paid for work on Sundays and holidays no additional compensation may be given by this Court for his failure to get a day of rest a week.

Libelant also claims he is entitled to penalties under the provisions of §§ 596 and 597 of Title 46 U.S.C.A. which provides that an owner of a vessel who refuses or neglects "without sufficient cause" to make payment of wages to a seaman within the period set forth in § 596 shall pay the seaman a sum equal to two days' pay for each day during which payment is delayed. The libel-

ant in this case received all the wages to which he was entitled, except his vacation pay and overtime for work on Sundays and holidays. He did not demand vacation pay or this overtime when he signed off the ship nor in fact until this action was instituted. In the Ship's Articles a certain amount of his basic monthly wage was indicated as being received by him as vacation pay. It took a detailed analysis of the Panama Labor Code by this Court to conclude that such a provision in the Ship's Articles was not sufficient compliance with the provisions regulating vacation pay. Was it arbitrary for the ship to assume that if libelant received the amount of pay set forth in the Ship's Articles he was not being deprived of wages which were due him, and that the failure to pay him extra vacation pay or Sunday overtime pay at the time he signed off the ship was "without sufficient cause?" I think not. The imposition of the penalty provided in these sections should be made only when the conduct of the ship is arbitrary, unwarranted and unjust, Glandzis v. Callinicos, 2 Cir., 1944, 140 F.2d 111; Collie v. Fergusson, 1930, 281 U.S. 52, 50 S.Ct. 189, 74 L.Ed. 696; nor should the penalty be imposed when there is a substantial question of law as to whether the libelant is entitled to more than the basic wage set forth in the Ship's Articles, McCrea v. United States, 1935, 294 U.S. 23, 55 S.Ct. 291, 79 L.Ed. 735, Dendrinos v. City of New York, D.C.S.D.N.Y.1949, 86 F.Supp. 688.

The Court concludes that plaintiff is entitled to a judgment:

| | |
|---|---:|
| For personal injuries | $5,000.00 |
| For vacation pay | 153.53 |
| For overtime for work on Sundays and national holidays | 49.17 |
| Total | $5,202.70 |

Let judgment be entered accordingly.

This opinion shall constitute the findings of fact and conclusions of law of the Court.