FERGUSON CONTRACTING COMPANY, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

J. VAN VECHTEN OLCOTT, as Receiver in Bankruptcy of the FERGUSON CONTRACTING COMPANY, Appellant, Respondent, *v.* THE STATE OF NEW YORK, Respondent, Appellant.

Third Department, July 6, 1922.

Canals — Barge canal — contract for construction of part of Barge canal — refusal of contractor to continue on ground of radical alteration constituting new contract — reservation of right by State to make necessary alterations in contract — alterations made were necessary within meaning of contract — contractor could not refuse to perform on ground that prices under altered contract were not fixed — contractor entitled to reasonable value of materials and services under altered contract — breach of contract by State was waived by subsequent breach by contractor — claim disallowed which was included in final account approved by Canal Board — counterclaim by State based on relet contract disallowed as prices therein did not represent fair and reasonable value of work — time of completing contract had not expired before alteration order.

A contract for the construction of a portion of the Barge canal which reserves the right to the State to make " such additions to or changes in the plans and specifications covering the work, as may be necessary," is not breached by the State so as to excuse non-performance on behalf of the contractor by an alteration order providing for a change in the plans for an extension of the walls of the prism, for substituting a concrete lining for puddle lining in certain places and concrete retaining walls for pile docking on the side of the canal, for raising the grade of a by-pass channel and for changing the specifications for crushed stone to be used in concrete, for such alterations did not constitute a radical change which the State was not authorized under contract to require the contractor to perform.

By necessary changes are meant such changes as are reasonably required in the judgment of competent men to accomplish lastingly the purpose of the act. The stipulation in the contract does not permit the State capriciously or arbitrarily to make alterations, nor does it permit the contractor, because of a narrow construction of the word " necessary," to refuse to perform.

The contractor could not legally refuse to complete his contract on the ground that the prices for the work under the contract as altered had not been agreed upon, for the State officials had no right to fix the prices, but it was the duty of the contractor to proceed with the work, protest the prices, and then recover from the State the fair value of the work performed and of the materials furnished.

The contractor by failing to fulfill its contract waived any prior breach thereof by the State based on delays occasioned by, and interference with the work by the State.

As to the item in reference to which there had been a final account approved by the Canal Board and receipted for by the contractor, it was properly disallowed.

A counterclaim interposed by the State against the contractor's claim for ten per cent which the State had withheld on estimates, based on the cost of completing the work under a relet contract in excess of the cost that would have been incurred had the contractor completed it at the unit prices cannot be sustained, for the unit prices are not applicable as a basis for determining the value of the work under the altered contract and, furthermore, there is no proof that the cost under the contract as relet was the fair and reasonable value of the work, but the inference is to the contrary.

There is no merit in the claim that the time for completion of the contract, as extended, had expired before the alteration order in question was made, for it was recognized at that time by both parties that the contract was still in existence and uncompleted.

KILEY, J., dissents.

APPEAL in the first above-entitled action by the claimant, Ferguson Contracting Company, from a judgment of the Court of Claims, entered in the office of the clerk of said court on the 9th day of January, 1911, dismissing claimant's claim.

Cross-appeals in the second above-entitled action by the claimant, J. Van Vechten Olcott, and by the defendant, the State of New York, from certain portions of a judgment of the Court of Claims, entered in the office of the clerk of said court on the 7th day of February, 1917, upon the report of a referee.

The Ferguson Contracting Company entered into a contract with the State of New York on the 3d day of April, 1905, known as contract No. 2, to construct a portion of the Barge canal provided for under the Barge Canal Act (Laws of 1903, chap. 147). The portion of the canal to be constructed extended from the Mohawk river near Waterford, N. Y., westerly about ninety-one one-hundredths of a mile. The contract provided generally for excavating the prism of the canal, constructing supports for the sides of the prism in places, the construction of two locks, Nos. 2 and 3, with side walls and floors of concrete and the covering of certain portions of the bottom or floor of the canal with clay puddle to prevent seepage through the porous, leachy gravel and sand. The contract was to be completed July 1, 1907. This time limit was extended to the 1st day of November, 1908. The contractor was ready and willing to perform the work provided for in the contract as altered and did so perform until it refused to continue under the seventh alteration. This refusal occurred on or about the 27th day of April, 1909, and thereupon the contract was canceled by the State; another contract (known as contract No. 2-E) for

the unfinished work, (about thirty per cent), under contract No. 2 and alteration No. 7 without change, was let on December 8, 1909. The work covered by contracts No. 2 and No. 2-E was completed in December, 1912, and the certificate of the completion required by the statute was duly made. The Ferguson Contracting Company, after its refusal to perform and after the State had canceled the contract, on August twenty fourth, served a notice of intention to file a claim and, on August 27, 1909, filed its claim to recover the ten per cent, which had been retained as security from time to time, the cost of extra work and materials and damages alleged to have been suffered by it on account of the delays occasioned by defaults of, and interference with the work by, the State. This claim was dismissed, after trial in the Court of Claims, findings of fact and law being made. From the judgment entered upon this determination the first appeal is taken. On August 3, 1910, J. V. V. Olcott was appointed a receiver in bankruptcy of the Ferguson Contracting Company by the District Court of the United States and authority was given him to prosecute the claim after completion of contract No. 2-E, which was also the completion of the work covered by contract No. 2. The receiver filed his claim covering substantially the same items set forth in the claim of the Ferguson Contracting Company and based upon the same alleged breaches of contract by the State. The second appeal is from the judgment entered after trial of this claim, before Honorable Irving G. Vann, referee.

*Davies, Auerbach & Cornell* [*Brainard Tolles* of counsel; *Richard E. Dwight* with him on the brief], for the claimants, appellants.

*Charles D. Newton, Attorney-General* [*Wilbur W. Chambers* of counsel; *Edwards P. Ward* with him on the brief], for the State of New York.

VAN KIRK, J.:

For convenience, and because the interests of neither party will be prejudiced thereby, we will consider the two cases together. When necessary to distinguish one from the other, we will call the first the company's claim or case and the second the receiver's claim or case. The two claims are substantially identical, arising under the same contract and presenting the same items. Most of the items of the claims are based upon alleged breaches of the contract on the part of the State. The principal defense is that the company broke its contract when it refused to continue performance under alteration No. 7, and whether or not the company did so break its contract is the chief question in each case.

Chapter 147 of the Laws of 1903 provided for the borrowing

of $101,000,000 by the State to construct the Barge canal; also that all work done upon the canal shall be done by written contract executed as required by law. The Barge canal was a project of great magnitude; it was understood that all of the necessary provisions in the plans and specifications for such an undertaking could not be foreseen and that in all likelihood changes and additions might be required as the work progressed and as the prism of the canal was opened. This provision was accordingly inserted in the contract:

" 7. It is mutually agreed that the State reserves the right until the final completion and acceptance of the work, to make such additions to or changes in the plans and specifications covering the work, as may be necessary, and the Contract shall not be invalidated thereby, and no claim shall be made by the Contractor for any loss of profits because of any such change or by reason of any variation between the quantities of the approximate estimate and the quantities of the work as done."

The statute provided limitations and requirements which must be observed in the expenditure of the public funds borrowed, and the terms of the statute and of the contracts entered into thereunder may not be disregarded. (*Belmar Contracting Co.* v. *State of New York*, 233 N. Y. 189, 194.)

The only question presented by the appeal in the company's case is whether the Court of Claims was right in holding that the contractor had broken the contract by refusing to comply with alteration order No. 7. By order of this court the appellant was permitted to amend its notice of appeal in such manner as to limit the appeal to this question. It has printed in the record such parts of the evidence as bear upon this question and has eliminated all other evidence, presenting a record similar to a bill of exceptions. The exceptions taken to the findings of the Court of Claims present this one question and the appellant argues no other question.

When alteration order No. 7 was made the contractor had performed about seventy per cent of the work under the contract. Six important alterations had been made, assented to by the contractor, and it performed under the plans and specifications as so altered. In the spring of 1908 the State considered it necessary to make alteration No. 7. There were conferences and communications between the representatives of the State and the company, extending into the spring of 1909, concerning prices for the work under the proposed alteration. These prices were not agreed upon and alteration order No. 7 was duly made in accordance with the requirements of the statute and the contract and served upon the contractor.

The record in the company's case shows that the ground of refusal was that the proposed changes were so radical as to be substantially the substitution of a new contract and beyond the right of the State to require the contractor to perform. On April 23, 1909, the contractor wrote to the State Engineer, acknowledging receipt of the plans for the alteration, and saying: " The work covered by this alteration is a complete and radical change from the original plans and contract, not only as to cost to us but as to character of plant required. * * * We must deny the right of the State to make such radical changes at our expense." On April twenty-fourth the special Deputy State Engineer replied: " The alteration order (No. 7) states among other things that ' you are hereby ordered and directed to progress the work in compliance with the changes in said plans and specifications which are made a part hereof,' " and asking that the contractor reply at his earliest convenience whether he intended to complete the work under this order. On April twenty-seventh the contractor replied: " We have had the opinion of the best legal and engineering talent available on this subject, and they advise us that this change is such a radical one as to be substantially the substitution of a new contract in place of our original contract. We were willing to but were not permitted to proceed with the original contract, and we regard ourselves released from all obligations under said contract, and we shall look to the State for damages for the breach." On May 6, 1909, the State Engineer wrote in reply: " I take it from your letter that you decline to proceed with the execution of your contract and shall therefore take the steps prescribed by chapter 147, Laws of 1903, and make the proper certificate to the Canal Board at its meeting to be held next week." On May tenth the company replied: " Answering yours of the 6th inst., have to say, as regards proceeding with the execution of our contract, you will please observe from the records of your Special Deputy that we were ordered not to proceed with our original contract nearly a year ago. Since that time the State has attempted to make a complete and radical change in the work to be done, which we decline to recognize as binding on us. We are ready to proceed with our original contract, if permitted to do so." On May fourteenth the Superintendent of Public Works wrote to the company informing it that its contract had been formally canceled by the Canal Board and giving notice that, in accordance with the terms of the contract and with the provisions of the statute, the work to be done under the contract will be advertised, and upon receipt of proper bid from a responsible party, the work placed under contract. There was no further correspondence

between the parties.   Under date of August 24, 1909, the company presented to the State its notice of intention to file a claim, containing this: "On or about the 14th day of April, 1909, the State, through the Canal Board, the Superintendent of Public Works and the State Engineer, determined to make a radical change in the plans and specifications for the work remaining to be done under said contract, thereby departing radically from the general character and type of the work as originally contemplated and made the basis of said contract No. 2.  The claimant declined to recognize said proposed radical alterations of the plans and specifications as binding upon it and thereupon on or about the 13th day of May, 1909, the Canal Board because of such refusal and for no other cause cancelled said contract."  Thereafter the company filed its claim and on December 7, 1909, an amended statement of claim, containing the following:  "On or about the 14th day of April, 1909, the State, acting by and through the Canal Board, the Superintendent of Public Works and the State Engineer, determined to make a radical change in the plans and specifications for the work remaining to be done under said contract in many particulars as, for example, by substituting new materials for the walls and floors of the canal over a great part of the uncompleted portion, thereby departing radically from the general character and type of the work as originally contemplated and made the basis of said Contract No. 2.  The claimant, while willing to proceed under the plans and specifications as originally made, or as subsequently altered by mutual agreement, or under any reasonable modification thereof, denied the power of the State to require the performance, under said contract, of work of a radically different character from that contracted for and declined to recognize said proposed radical alteration of the plans and specifications as binding upon it.  Thereupon, on or about the 13th day of May, 1909, the Canal Board, because of such refusal and for no other cause, cancelled said contract, and the State from that time has refused and still refuses to allow the claimant to proceed with said contract."

After the letter of April twenty-third from the company to the State Engineer there is no mention on the part of the company of the prices to be paid and no complaint based upon that ground. In the subsequent letters, in the notice of intention to file a claim, in the claim and the amended claim, the company took the position that the alterations required such a radical change that the State was not authorized to require the contractor to perform and this was the position to which the State must make reply.

Alteration No. 7 provided for a change in the plans for an

extension of the walls of the prism at the Champlain canal crossing, for substituting a concrete lining for the puddle lining in the bottom of the canal and concrete retaining walls for pile docking on the sides of the canal, for eliminating puddle lining in certain places, for raising the grade of the by-pass channel around lock No. 3, and for changing the specifications for crushed stone to be used in concrete. The reasons for each change were recited in the order. These proposed changes we think were, each of them, within the reasonable terms of the contract, were nothing else than " additions to or changes in the plans and specifications," and were properly deemed to be necessary to carry out the intent and purpose of the State as expressed in the Barge Canal Act. By necessary changes are meant such changes as are reasonably required in the judgment of competent men to accomplish lastingly the purpose of the act. The stipulation does not permit the State capriciously or arbitrarily to make alterations; nor does it permit the contractor, because of a narrow construction of the word " necessary " to refuse to perform. The word " necessary " does not limit the privilege of the State to making those changes without which the canal could not possibly be constructed. No element of the alterations was a radical, fundamental change beyond the power of the State to require under the law and the stipulations of the contract. (See *Kinser Const. Co.* v. *State of New York*, 204 N. Y. 391, 392, 394.) Some of the prior alterations were of a character which could be fairly considered more radical departures from the contract and plans and specifications than the changes made in alteration No. 7.

The appellant, however, now takes the position in its exceptions and notice of appeal that it refused to perform because the compensation named in the order was inadequate. This is a wide departure from the statement in its claim filed, but deserves consideration. In the alteration order is the following: " The prices to be paid by the State and received by you as full compensation for all items of work done and material used under this order are the same per unit of measure as the ones already fixed by this contract." The liability of the State depends absolutely upon the written contract. Without a written contract there could arise no liability. With the written contract there can arise a liability for damages when the contractor has performed according to its terms, but the State has not performed, and then only. This contract was carefully drawn in strict compliance with the statute. It is the standard and measure of liability on the part of the State to the claimant. The parties contracted that the State could

make such changes and additions in the plans and specifications as may be necessary and the contract shall not be invalidated thereby. The representatives of the State are not given the power or right to fix the prices for such additions or alterations. It is not provided that the parties in such case shall agree on prices, nor that the alterations shall be made at the prices named in the contract for similar work. If then the parties could not agree upon prices, was the State helpless? We think not. It had the right to order changes or additions; the contractor must obey the order. But, since the State officials had not the right to fix the prices, the company need not accept the prices named by the representatives of the State in the order. The contractor may do the work, but may protest the prices. The order is not a contract. The State having ordered the work and the price not having been agreed on, it must pay the fair value of the work when performed, as any other employer under like circumstances must. The company has contracted to perform the additions or alterations ordered; and when it so does, it may collect the fair, reasonable value for its work and materials as may any other employee who has done work without the price for the services being agreed upon. It would be entirely unjust that, four years after the contract was made, and under changed costs and conditions, the company should be limited to the earlier bid prices. If the company had performed under the order as it was obliged to, it would not follow that the company had assented to the prices which it had protested and which the representatives of the State were not authorized to insert in the order. If then, it be assumed that the company refused to perform on account of prices, we think it broke its contract. (*Foundation Co.* v. *State of New York,* 233 N. Y. 177, 188.)

We conclude that the one ground on which the appeal in the company's case rests is untenable and proceed to the appeal in the receiver's case.

The decision that the company broke its contract disposes of all those items which were disallowed by the referee except item No. 12. These items consist of claims for damages alleged to be due to delays occasioned by, and interference with the work by, the State; that is for damages for breaches of the contract by the State. This is the plain unequivocal charge in the statement of the claim for these items. When these breaches occurred the contractor did not refuse to perform, nor did it choose to consider itself discharged thereby from its obligations; but it continued its work, completed the alterations and the State paid for all work done by it prior to its breach of the contract. The

right to recover for these items of damage depends upon the contract and that the State had violated it. By the breach of the contract on the part of the contractor it forfeited its right to recover such damages. (*Fox* v. *Davidson*, 36 App. Div. 159; *Matter of Semper* v. *Duffey*, 227 N. Y. 151; *Jacob & Youngs* v. *Kent*, 230 id. 239.) If one party has breached its contract in a substantial measure, the injured party need not regard it as a discharge; he may continue to perform and reserve his right to recover the damage he has suffered by the breach, but in such course he keeps the contract alive for both parties; and, in order to recover later for such breach, he must perform in all essential respects upon his part. (*Becker* v. *Seggie*, 139 App. Div. 463; 13 C. J. 589, § 602; Id. 655, § 729.) All those items, therefore, recovery for which depends upon performance, are properly rejected. Item No. 12 was properly disallowed on the ground that there had been a final account covering the item approved by the Canal Board and receipted for by the contractor.

The referee has allowed items Nos. 1, 9, 10 and 19. We find no reason for comment as to items 9, 10 and 19. They are claims for extra work; and, for the reasons given by the distinguished jurist, the referee herein, we approve his conclusions.

Item No. 1 is to recover the ten per cent retained by the State as security out of the funds due the contractor for completed work on monthly estimates under the terms of the contract. The State does not contest this item. It admits the money has been earned by and belongs to the company, subject only to such counterclaim as the State may have against the contractor. The State's counterclaim is for that part of the cost of completing the work after the cancellation of the contract in excess of the cost that would have been incurred had the contractor completed at the unit prices. We have held that the unit prices are not applicable, and that the compensation for the work under alteration order No. 7 should be the fair and reasonable value of the work. There is no proof that the cost under the contract as relet was not the fair and reasonable value of the work. We think the fair inference is to the contrary. We, therefore, approve the allowance of item No. 1, and the disallowance of the State's counterclaim.

The cancellation of the State's contract was accomplished in compliance with the terms of the contract and the Barge Canal Act (Laws of 1903, chap. 147, § 7, as amd. by Laws of 1909, chap. 267), but, if we are right in our conclusion that the company broke its contract when it refused to perform under alteration order No. 7, there is no occasion for considering the effect of the cancellation.

We do not think there is merit in the claim of the appellant

that the time for completion of the contract as extended had expired before the alteration order was made. It was recognized by both parties that the work had not been completed. Neither party objected that the time had expired and neither party had sought to terminate the contract or its obligations under the contract because of the expiration of the time. Indeed, in its last communication to the State, May 10, 1909, the company says: " We are ready to proceed with our original contract if permitted to do so."

The judgment in each case should, therefore, be affirmed, with costs.

All concur, except KILEY, J., dissenting and H. T. KELLOGG, J., not voting.

Judgment in each case affirmed, with costs.