JOSEPH F. McMAHON, Claimant, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 25718.)

Court of Claims,August 14, 1942.

*Austin W. Erwin*, for the claimant.

*John J. Bennett, Jr., Attorney-General [Paul Muscarella, Assistant Attorney-General*, of counsel], for the defendant.

GREENBERG, J.  This claim was filed to recover compensation for overtime services performed by the claimant while employed as a guard at the State Agricultural and Industrial School, maintained by the State at Industry, New York.

On May 25, 1936, section 168 was added to the Labor Law (Laws of 1936, chap. 716).  This new section prescribed that after July 1, 1937, certain State employees, including those in the cate-

gory of the claimant, should not be required or permitted to work more than eight hours daily, or more than forty-eight hours in any calendar week, except upon the happening of one or more specified emergencies. (Labor Law, § 168, subd. 2.)

The gravamen of the claim is that, although none of the defined emergencies occurred, the claimant, nevertheless, was required to work at the school a total of 1,340 hours in excess of the statutory maximum of eight hours a day during the period beginning July 1, 1937, and ending August 5, 1938.

There is no dispute as to the facts. The claimant promptly protested against the performance of overtime work without receiving compensation therefor. As a local officer of the Civil Service Association, the claimant, from time to time, conferred with the superintendent of the school concerning such compensation not only in his own behalf, but, also, for fellow employees. Despite assurances that the matter would be looked into and straightened out, his negotiations eventually proved abortive. He now seeks to recover $927.68 as the compensation due him for overtime services.

The questions of law involved are of importance not merely to the claimant, but to many others, since it is stated that upwards of ninety similar claims, which differ only in the amount of moneys claimed, have been filed by the claimant's fellow employees. Both sides appreciate that the adjudication in this case will decisively affect the other claims.

The present claim was not filed, in the first instance, within six months of its accrual, as required by the Court of Claims Act. This court per GIBBS, J., granted the claimant's motion for leave to file the claim (173 Misc. 1004). The order granting such motion was affirmed by the Appellate Division without opinion. (*McMahon* v. *State of New York*, 261 App. Div. 879.)

The record and briefs on the appeal plainly show that the legal sufficiency of the claim was not passed upon by the Appellate Division, as neither the claimant nor the State raised or discussed the question. It is, therefore, the duty of this court to determine whether upon the undisputed facts the claimant has a cause of action.

The superintendent of the school where the claimant was employed was charged by statute with the duty of managing it. (Social Welfare Law, §§ 418, 419.) As a State employee, his general managerial powers necessarily were subject to such lawful restrictions as the Legislature, in the exercise of its untrammeled discretion, might choose to impose.

It was entirely competent for the State to provide, as it did by section 168 of the Labor Law, that its employees at this insti-

tution shall not, on and after July 1, 1937, be employed more than eight hours a day, or more than forty-eight hours in any calendar week, except in the event of emergency. Subject to this exception, the eight-hour working day became mandatory. That the overtime services performed by the claimant on and after July 1, 1937, were not the result of any emergency as defined by the statute, is asserted by the claimant and not disputed by the State.

In the absence of some such emergency, however, the performance of overtime work was proscribed by section 168 of the Labor Law. Consequently, it is clear that no legal capacity was vested in the superintendent, as manager of the school, or in any other State official, to employ the claimant for more than eight hours a day on and after July 1, 1937. Such lack of legal capacity carried with it the sequential absence of power to bind the State to pay compensation for the rendition of overtime services directly interdicted by the statute.

This view is further fortified when the operational date of section 168 of the Labor Law is duly considered. Prior to July 1, 1937, the claimant and his fellow-employees were employed and compensated on the basis of a twelve-hour working day. In adopting section 168 of the Labor Law, the Legislature recognized that time would be required to consummate the necessary administrative preparations to accomplish the transition from a twelve-hour working day to one of eight hours. For this purpose, the operative date of section 168 of the Labor Law was, by subdivision 2 thereof, postponed for a little more than thirteen months following May 25, 1936. This postponement convincingly evidences the considered determination of the Legislature that the employees enumerated in section 168 of the Labor Law were not, on and after July 1, 1937, to engage in overtime work at the expense of the State even under the compulsion of any administrative needs not due to one of the specified emergencies.

Aside from this evidence of the legislative intent and purpose thus afforded by section 168 of the Labor Law, the absence of legal capacity on the part of any State official to contract for compensable overtime services in State work is extremely and fully confirmed by section 160 of the Labor Law, which, after declaring the number of hours that shall constitute a legal day's work for railroad employees, provides as follows:

" 3. For all other employees, except those engaged in farm or domestic service and those affected by subdivision four of section two hundred and twenty, eight hours.

" This subdivision shall not prevent an agreement for overwork at an increased compensation, *except upon work by or for the state or a municipal corporation, or by contractors or subcontractors therewith, and except as otherwise provided in this chapter.*" (Italics supplied.)

The claimant, like all other persons dealing with the superintendent, must be charged with notice of these limitations upon his authority. As a matter of law, the claimant must be held to have known that neither the superintendent nor any other State official had any power to contract for overtime services for the State's account. In default of that power to contract, the State cannot be burdened with the obligation to pay the claimant for his overtime services.

The conclusion is irresistible, therefore, that no express contract was, or could be, entered into with the claimant that would bind the State to pay for overtime services prohibited by statute. (*Burns* v. *City of New York*, 121 App. Div. 180.)

It is urged, however, that, as the claimant worked overtime under protest, and coupled his protest and overtime services with a demand for compensation, the State may still be held liable as upon an implied contract for the fair value of such overtime work. This contention is not tenable. The general rule that the State, like an individual or private corporation, may be held answerable by implication on an executed contract to one who has *bona fide* performed labor for it under a contract that does not comply with statutory requirements, is manifestly subject to the qualification that the State is not disabled by some express statutory prohibition from incurring, or assuming, the liability. (*Harlem Gaslight Co.* v. *Mayor, etc. of New York*, 33 N. Y. 309, 323.)

As no official could subject the State to liability for such overtime work by express contract, in the face of the statutory prohibition cited, no such official could by his acts, either positive or negative, create a valid contract implied in fact. (*Lindlots Realty Corp.* v. *County of Suffolk*, 278 N. Y. 45, 52, 53; *Burns* v. *City of New York, supra.*) Statutory limitations upon the power to impose an express contractual obligation binding the State to pay for overtime services are equally applicable to a like contract implied in fact. (*Miller* v. *Schloss*, 218 N. Y. 400, 406, 407.)

Nor may the claimant find support for his claim in the doctrine of unjust enrichment. It is the law itself in a proper case, that raises the promise implied in law that is the cornerstone of the doctrine of unjust enrichment. That doctrine may not, however, be invoked in contravention of section 168 of the Labor Law.

which forbade the overtime work sued for, and of section 160 of the Labor Law, which expressly denies the right to compensation for overtime services in the case of State work. Neither the superintendent of the school, nor any other official of the State, had the power to waive these prohibitions for the State, or by any acts, either of commission or omission, estop the State from interposing them as bars to a recovery herein.

The contention is also advanced that the provisions of section 12 of the Court of Claims Act, in force when this claim accrued, authorize a recovery. That section, it is true, vested jurisdiction in this court to try and render judgment in respect of private claims against the State. However, the immunity enjoyed by the State as a sovereign power extends both to a claim itself and to the right to enforce it. Section 12 of the Court of Claims Act only waived the State's immunity from suit upon claims involving legal liability. It did not accord any legal recognition of any alleged claim that is unsupported by, or opposed to, substantive law. (*Farrington* v. *State of New York*, 248 N. Y. 112, 116.)

The position of the claimant, in the final analysis, is most unfortunate. He has, on the conceded facts, benefited the State by performing extra work for which he has received no compensation. The legal limitations upon the power of this court compel the rejection of this claim. Relief upon this thoroughly moral claim cannot be obtained in this court, but must emanate from the Legislature, which, in its discretion, alone may properly assume responsibility, in behalf of the State, for a claim founded in equity and justice and involving a moral obligation of the State, without contravening any of the constitutional limitations upon its powers. (*Farrington* v. *State of New York*, *supra*, 115.)

It follows that the State is entitled to judgment dismissing the claim on the merits.