LONG ISLAND RAILROAD COMPANY, Claimant, *v.* STATE OF NEW YORK, Defendant.

(Motion No. 1060.)

Court of Claims, August 7, 1945.

*Nathaniel L. Goldstein, Attorney-General (Gerald J. Carey* of counsel), for defendant.

*Louis J. Carruthers* and *Henry B. Staples* for claimant.

GREENBERG, J. Temporary easements in five parcels of claimant's property lying outside the normal limits of its right of way in the village of Lynbrook, in Nassau County, were appropriated in accordance with the provisions of the Grade Crossing Elimination Act (L. 1928, ch. 678) and agreements adjusting the compensation to be paid were thereafter entered into between the parties. The amounts agreed upon for the five parcels total the sum of $195,249. The contracts were signed by the Assistant Chief Engineer of the Department of Public Works, on behalf of the State of New York, and by the officers of the claimant and the County of Nassau, and stipulated that they were subject to the approval of the Comptroller of the State of New York under the provisions of chapter 342 of the Laws of 1913. This approval has not been given to date. The claim herein was filed for the amount agreed upon as compensation for the taking of the five parcels of claimant's property above mentioned.

The Attorney-General has moved to dismiss the claim on the ground that the aforesaid contracts had not been approved by the Comptroller of the State in accordance with the provisions of chapter 342 of the Laws of 1913 (now State Finance Law, § 112) and on the further ground that the claim herein for the appropriation of claimant's property was not filed within the two-year period provided for in section 10 of the Court of Claims Act (L. 1939, ch. 860).

The instruments, upon which claimant predicates its purported claim, provide that as a condition precedent to the claimant being entitled to payment the approval of the comptroller must be first obtained. Chapter 342 of the Laws of 1913 provided: " Before any contract made for or by any state charitable institution, reformatory, house of refuge, industrial school, officer, department, board or commission, shall be executed or become effective, when such contract exceeds one thousand dollars in amount, it shall first be approved by the comptroller and filed in his office."

This section was subsequently amended by chapter 386 of the Laws of 1933 and by chapter 523 of the Laws of 1941 (eff. April 17, 1941), which latter amendment provided: " Before any contract made for or by any state department, board, officer, commission, or institution, or by a railroad corpora-

tion for grade crossing eliminations shall be executed or become effective, when such contract exceeds five hundred dollars in amount, it shall first be approved by the comptroller and filed in his office. Whenever any liability of any nature shall be incurred by or for any state department, board, officer, commission, or institution, notice that such liability has been incurred shall be immediately given in writing to the state comptroller.

" No instrument wherein the state or any of its officers, agencies, boards or commissions agrees to give a consideration other than the payment of money shall become a valid enforceable contract unless such instrument shall first be approved by the comptroller and filed in his office." (State Finance Law, § 112.)

No contractual liability can be imposed upon the State except in the manner prescribed by law. The statute in question provided that no contract over a certain sum shall be deemed executed or effective unless the same is first approved by the comptroller and filed in his office. Such provisions can not be waived by any of the officers of the State. (*Belmar Contracting Co.* v. *State of New York*, 233 N. Y. 289; *New York Central R. R. Co.* v. *State of New York*, 183 Misc. 815.) In the *Belmar* case *(supra)* the Court of Appeals held: " There is a like situation here. Section 130 of the Highway Law clearly provides that the execution of a formal written contract after its approval by the comptroller is essential. This is the basis of the liability of the state. None of its officers may impose upon it a contractual obligation except in the manner prescribed. We may not ignore the restrictions and limitations with which the legislature has chosen to surround the expenditure of public moneys. They are wise and should be enforced. The state has chosen to enact something similar to the Statute of Frauds for its own protection. Those dealing with it do so knowing this fact and at their own risk. If there is no contract there is no liability. However inequitable the conduct of the state may be it has said that it shall only be responsible upon one condition and consequently the claimant must show that that condition has been complied with. Nor may this rule be evaded any more than the provisions of the Statute of Frauds may be evaded on any theory that while the contract itself is unenforcible the contract to make this contract is valid. (*Dung* v. *Parker*, 52 N. Y. 494.) Had the State of New York refused entirely to execute the contract it incurred no liability. Equally true is this if it merely delays in its

execution. (*South Boston Iron Co.* v. *United States*, 118 U. S. 37.)"

If the claimant seeks to treat the claim herein as one for the appropriation of real property rather than one predicated upon the pleaded contract, then this court has no jurisdiction of the claim by reason of the fact that it was filed more than two years after the date of taking. The appropriations of the various parcels had been effected between July 24, 1939, and December 30, 1940, and the claim had been filed on January 10, 1945.

Though equity and justice might require the State to reimburse the claimant for its appropriated property, relief can only come through legislative action rather than judicial fiat. (*Toyos* v. *State of New York*, 181 Misc. 761.)

The motion to dismiss the claim is therefore granted. Submit order.