JAMES C. TULLY, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28394.)

JANE TULLY, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28395.)

ELEANOR C. VAN HORNE, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28396.)

WALTER R. VAN HORNE, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28397.)

Court of Claims, August 27, 1949.

*W. Cullen Stevens* (deceased) and *James T. Griffin* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Edward R. Murphy* of counsel), for defendant.

LAMBIASE, J. These claims have been filed by the claimants to recover compensation from the State of New York for alleged overtime employment to the extent of four hours a day for the period of March 1, 1945, to August 15, 1945, at the Rome State School, an institution owned, operated and maintained by the State of New York for the care, training and custody of mental defectives.

Claimants allege that they rendered said services to the State of New York in the respective capacities set forth in their respective claims, pursuant to the provisions of section 168-a of the Labor Law of the State of New York as in effect at the time that said services were rendered by them (L. 1943, ch. 27, as amd.; repealed L. 1947, ch. 270, § 3), and that they are entitled to be compensated thereunder for the services thus rendered. While the amounts demanded in these claims are not too large, the questions of law involved are of the utmost importance not

only to these claimants but to many others whose claims arising out of the same circumstances have been filed and are now on the calendar of this court, the ultimate disposition of which will be affected by our adjudication herein. In fact, these four claims were tried together by stipulation and, in effect, constitute what may be designated as " test " cases.

Claimants are colony employees of the Rome State School. Under the colony system certain inmates of the school are kept in groups in little settlements of cottages located on farms and in urban areas away from the institution proper, but functioning, nevertheless, as part of its institutional administration. Usually, a cottage is in charge of a married couple. Where the cottage is occupied by boys, the husband is in control and the wife assists him; and where the cottage is occupied by girls, the wife is in control and she is assisted by her husband. The inmates are permitted to work on farms and for private employers. It is sought by this colony system to give the inmates an environment that may help to rehabilitate them and to improve their condition so that it may be possible for them eventually to leave the institution and to take their places in their respective communities. At all times in the claims mentioned there were among such colonies the Greene Farm Colony for Boys, with claimants James C. Tully and his wife Jane, in charge, and the Frankfort Domestic Colony for Girls, located in Frankfort, New York, with claimants Walter R. Van Horne and his wife Eleanor C., in charge.

Section 168 of the Labor Law of the State of New York, as in effect at all times in the claims set forth, prescribed that certain State employees, including those in the category of claimants (*Marriott* v. *State of New York,* 196 Misc. 454, appeal pending) were not to be required or permitted to work more than eight hours in any day or more than forty-eight hours or more than six days in any calendar week, except in the event of emergency and except as in said section provided. The employees in said section named were thus limited to eight hours of employment daily and they could not thereunder recover compensation for overtime employment in the absence of proof of some such emergency. (*McMahon* v. *State of New York,* 178 Misc. 865.)

Section 168-a of the Labor Law of the State of New York, as in effect at the times in the claims mentioned, insofar as it affected the Rome State School and the claimants herein, provided in substance in pertinent parts that where there was a vacancy in one or more positions in the institution the Commis-

sioner of the Department of Mental Hygiene could authorize, subject to the approval of the Director of the Budget, such overtime employment in the institution as he deemed necessary, but in no event could the total of overtime employment permitted in any such institution exceed eight hours in any day for such position in which a vacancy existed (subd. 2). It also provided that any State employee in such institution could, with the approval of the superintendent or other head of the institution, volunteer for such overtime employment (subd. 3); with the proviso, however, that no such employee could be permitted to work more than twelve hours in any day except in the event of emergency as in said section set forth (subd. 5). It is not claimed herein that any such emergency existed.

To recover against the State of New York herein compliance with the conditions set forth in the foregoing section 168-a must be shown. " This is the basis of the liability of the state. None of its officers may impose upon it a contractual obligation except in the manner prescribed. We may not ignore the restrictions and limitations with which the legislature has chosen to surround the expenditure of public moneys. They are wise and should be enforced." (*Belmar Contr. Co.* v. *State of New York,* 233 N. Y. 189, 194; *Peterson* v. *Mayor of City of New York,* 17 N. Y. 449, 454; *Seif* v. *City of Long Beach,* 286 N. Y. 382; *Long Island R. R. Co.* v. *State of New York,* 185 Misc. 646, 648; *Ferguson Contr. Co.* v. *State of New York,* 202 App. Div. 27, affd. 237 N. Y. 186; *New York Central R. R. Co.* v. *State of New York,* 183 Misc. 815. See, also, *Rosenstock* v. *City of New York,* 97 App. Div. 337, affd. 181 N. Y. 550; and *Baldwin* v. *Hegeman Farms Corp.,* 154 Misc. 285.)

Claimants assert that they have established herein that they have complied with the conditions of said statute and are entitled to a recovery, while the State of New York, on the other hand, maintains that there has been no compliance therewith and that, therefore, there can be no recovery and the claims must be dismissed. We are unable to sustain the position of the claimants herein.

We experience no difficulty in finding that at the times in the claims mentioned vacancies at the Rome State School existed in the positions held by claimants, and that they were circularized with reference to, and volunteered for, overtime employment. It does not appear, however, that there was ever (a) approval by the superintendent of the school of their action in thus volunteering, and (b) authorization by the Commissioner of the Department of Mental Hygiene and approval by the Director

of the Budget of any alleged overtime employment as required by the statute. On the contrary, there is evidence in the record that in 1943, after section 168-a of the Labor Law had been enacted and on later dates, overtime employment for employees in the job classification of the claimants working in the colony service was not approved, the Commissioner of the Department of Mental Hygiene and the superintendent of the school taking the position that claimants were performing no duties additional to and beyond those which they had performed before the enactment of said section.

Without discussing the reason expressed for not giving such authorization and approval, the fact remains that authorization for, and approval of, overtime employment for claimants was expressly refused. It has been established that this determination not to approve these claimants for overtime employment was not communicated to the claimants. However, there is no provision in the statute involved herein making that mandatory.

It has been also established herein, among other things: (a) that the Commissioner of the Department of Mental Hygiene, accompanied by the superintendent of the school, visited the colonies at the school from time to time, inspected them and that he was familiar with their operation; (b) that he had discussed the overtime employment situation with the superintendent of the school; and (c) that no list was ever published by the Department of Mental Hygiene showing what employees at the school were eligible for overtime employment. It is urged by claimants that by reason of the foregoing, and because of the facts and circumstances established by the record, that they had a right to assume that overtime employment in their instance had been authorized and approved pursuant to the statute. With this we are unable to agree, for, in our opinion, the record does not justify an inference of authorization by the Commissioner of the Department of Mental Hygiene and of the other approvals required by the statute.

Claimants' names never appeared on any overtime payrolls submitted by the school authorities for audit and payment. They were never certified to the State Comptroller or approved by the Director of the Budget for overtime employment by name or by job classification in the colony service either by formal " Certificate of Approval," or by informal extensions thereof, or otherwise. It is significant in this connection that the names of all employees of the school whose overtime employment was authorized and approved pursuant to the statute, did appear on overtime payrolls, and that the names of those thus appearing were

of employees who worked a shift of definite duration. Such employees actually worked additional hours beyond the stipulated hours of their established shifts and were paid therefor out of moneys appropriated for that purpose.

This situation, as we have described it, persisted during the period for which claimants have made claims herein. Concededly, claimants were treated by the officials named in the statute in the matter of hours of work being performed by them no differently after the enactment of section 168-a of the Labor Law, which first became effective February 26, 1943, than they had been prior to its enactment. Notwithstanding this state of things, claimants continued to work during the entire period in the claims set forth and thereafter, the same number of hours and to render the same services as they had always rendered, although they and others similarly situated had concerned themselves with this question of payment for overtime services for several years prior to the period set forth in the claims, and had retained able counsel to aid them with reference thereto (S.M. 296).

It appears that there had been complaints by the colony employees about their hours of employment and that a meeting was called in the latter part of November or the early part of December, 1942, shortly after Dr. Kelleher had taken over direction of the school and after the effective date of section 168 of the Labor Law, but before the effective date of section 168-a thereof, to discuss the matter. At that meeting Dr. Kelleher told claimants and other colony employees " That they were the masters of the Colony and they knew the law and the law said they should work eight hours, and the Director had no authority or permission to either force them or permit them, to work longer than eight hours " (S. M. 290). Claimant Walter R. Van Horne, testifying with reference to that meeting, said that he was present and that Dr. Kelleher said at that time that " We could arrange our time on the Colony, but must not neglect our Colony work " (S. M. 294). On the general subject of hours of labor insofar as it concerned the claimants and others similarly situated, it was Dr. Kelleher's testimony that he had " left it to the Colony people, the people in charge of the Colony, as to how they should dispose of their hours of work on the Colony " (S. M. 289). Whether or not claimants did work overtime after said meeting, and particularly during the period at issue herein, we do not deem it essential to determine, for assuming, *arguendo,* that claimants did render overtime services as the same were defined by subdivision 1 of section 168-a of the Labor Law, it

would not change their position any herein, in view of our determination hereinbefore expressed that they have not proved that there was compliance by them, and each of them, with the provisions of section 168-a, aforesaid, upon which they predicate their claims and without which there can be no recovery herein.

The difficulty of proving compliance with the provisions of section 168-a of the Labor Law under the circumstances herein, and particularly because, concededly, there was no formal authorization for, and no formal approval of, overtime employment insofar as these claimants are concerned, does not change the law or the liability of the State thereunder, or the pertinent rules of evidence. The Legislature of the State of New York made the State of New York liable upon the conditions set forth in said section. Liability, therefore, is to be determined by proper proof of compliance therewith, and by no other consideration. While " Courts should not be astute to enable a municipal corporation to disavow its just commitments or obligations, or to conduct itself respecting them in a manner violative of fair dealing, which they would not sanction were natural persons the parties involved " (*Lowe* v. *City of New York,* 240 App. Div. 484, 489, affd. 265 N. Y. 583), where the charter or a statute binding upon the corporation has committed a class of acts to particular officers or agents other than the general governing body, or where it has prescribed certain formalities as conditions to the performance of any description of corporate business, the proper functionaries must act, and the designated forms must be observed, and generally no act of recognition can supply a defect in these respects. (*Peterson* v. *Mayor of City of New York,* 17 N. Y. 449, 454. See, also, *McDonald* v. *Mayor of City of New York,* 68 N. Y. 23.) In cases such as these equitable powers of the courts may not be invoked to sanction disregard of statutory safeguards and restrictions. (*Seif* v. *City of Long Beach,* 286 N. Y. 382, 388, *supra.*)

Upon the record herein we conclude that claimants have failed to establish compliance with the requirements of section 168-a of the Labor Law of the State of New York, and that they have, therefore, failed to establish against the State of New York the cause of action set forth in their respective claims. The claim of each of the claimants herein must be, and hereby is, dismissed upon the merits.