## SORENSEN v. CITY OF NEW YORK.

United States District Court
S. D. New York.
July 20, 1951.

William L. Standard, New York City, (Louis R. Harolds, New York City, of counsel), for libellant.

John P. McGrath, Corp. Counsel of the City of New York, New York City (Joseph T. Caponigri, New York City, of counsel), for respondent.

WEINFELD, District Judge.

This action is brought pursuant to Title 46 U.S.C.A., §§ 596 and 597, to recover overtime compensation from the respondent City of New York, by whom libellant was employed as an engineer on sludge vessels owned by it. The libel alleges that on various occasions between 1938 and 1946 libellant worked in excess of his regular hours of employment, thereby becoming entitled to overtime pay. The respondent resists payment upon the ground that libellant as a City employee may not recover compensation in excess of the amount fixed in the City Budget and only the Board of Estimate may alter the rate or amount; and further, assuming arguendo an agreement, express or implied, to pay overtime, the failure of libellant to protest when signing the City's payroll precludes recovery.

The instant case, which is one of 43 pending actions brought by seamen, officers and captains employed on such sludge vessels, was tried under a stipulation that the decision herein shall be binding in all cases.

The parties also stipulated the following facts:

Libellant's salary, insofar as his regular hours are concerned, was fixed by the City Budget on a monthly basis, payments being made semi-monthly. The sludge boats on which libellant worked are certificated by the United States Coast Guard and are licensed as coastwise vessels. For the purpose of trial it is assumed that libellant performed extra work aboard such sludge vessels not within his regular hours at the times referred to in the libel for which he has not received payment from respondent. Except in one or two instances, he signed the payroll without noting a written protest when receiving his pay.

The foregoing stipulation was supplemented by testimony received at the trial which may be summarized as follows:

The sludge vessels are used to transport waste from the municipal sewage plants operated by the New York City Department of Public Works for disposal at sea. A normal return trip to and from the dumping point, some 35 miles in each direction, runs approximately 8 hours. Eight hours of actual duty aboard the vessel constitute the normal work day.[1]

The present claim is for time spent in excess of 8 hours per day occasioned by either delays due to weather conditions or additional daily trips which were made under direct orders of the master of the vessel. Libellant was granted some compensatory time off for overtime work performed at various times between January 31, 1938 and March, 1946, but this was not equivalent to the excess hours worked and no cash payment has ever been made for the difference for which recovery is sought by this suit. Since 1947 libellant has received full payment in compensatory time for overtime hours.

As already noted, a substantial part of the overtime work was performed by order of the captains in charge of the vessels. Libellant was assured thereafter by the Superintendent in charge of sludge boat operations of the Department of Public Works that he would be compensated for his overtime either in cash or equivalent time off. On one occasion in the spring

---

1. Special Order 334 of the Department of Public Works, dated November 17, 1938, provides: "Eight hours of actual duty will normally constitute a day's work aboard each vessel * * *."
   This order remained in effect throughout the period involved in this suit.

of 1938 when the crew of one of the vessels refused to make a second trip unless a higher authority than the captain assured them either of payment or time off, they returned to work only after the Assistant to the Commissioner of the Department advised them that their claims would be "taken up" with the Budget Director, although he did not expressly promise them overtime compensation. Efforts of libellant and other sludge workers to see and discuss their claims with the Commissioner of Public Works failed, although they did confer with a Deputy Commissioner, who referred them to an Assistant Corporation Counsel of the City of New York, who advised them the matter would have to go through the Budgetary process.

The issues in this case have been narrowed by a decision made by District Judge Ryan on a pretrial hearing of one of the companion cases, which by agreement of the parties is binding in all 43 cases. Dendrinos v. City of New York, D.C., 86 F. Supp. 688.

Judge Ryan held that libellant is a seaman and therefore his rights are governed by federal statute rather than by local state or municipal law,[2] and he has a right to maintain this action under 46 U.S.C.A. §§ 596, 597 for wages withheld. That statute does not provide for overtime payment to a seaman in the absence of a contract; it permits recovery of wages only on the basis of an agreement. Absent any allegation by libellant of an express agreement by respondent to pay overtime wages, the issue as to whether under all the circumstances a contract might be implied in fact was left for determination upon the trial. Judge Ryan also held that the punitive or double wage provision of 46 U.S.C.A. § 596 for failure to make payment "without sufficient cause" may not be invoked since there is a substantial question of law as to whether libellants are entitled to payment for the extra hours of work. Finally, he held that although signing of the

payroll and acceptance of his salary by libellant without protest did not operate as a release of his claim, it is "potent evidence" that such payment was in full under the terms of his employment by the City, and the "signing without protest places upon [him] a very heavy burden of proving that these receipts were not in full accord and satisfaction of [his] claims." Dendrinos v. City of New York, supra, 86 F.Supp. at page 690.

Thus the remaining issues to be decided are (1) the existence of an implied contract for the payment of overtime compensation, which involves the capacity of the respondent, City of New York, to enter into such an agreement and (2) whether the signing of the payroll without protest constitutes an acceptance of salary payments in full accord and satisfaction of any claim.

## I

An implied in fact contract arises from the "'presumed' intention of the parties as indicated by their conduct." Martin v. Campanaro, 2 Cir., 156 F.2d 127, 129. In contrast to an express contract, it stems from "Mutual agreement and intent to promise * * * where the agreement and promise have not been expressed in words". 1 Williston on Contracts, Rev. Ed. 8.

Liability will attach if it is known that services are rendered with an expectation of compensation, even though no request for their performance has been made. "It is a question of fact if services are accepted whether a reasonable man in the position of the parties would understand that they were offered in return for a fair compensation." Williston, supra, 94, 95.

Libellant predicates his claim in large measure upon the orders by his captains and statements of other superior officers of the Department of Plants and Structures as establishing an implied contract on the part of the City to compensate for his overtime

---

2. This was recognized by respondent itself, which in its Special Order No. 234 provided:
   "1. * * *
   "2. * * *

"3. All employees assigned to motor sludge vessels are governed by Federal statutes. The provisions of the New York Labor Law do not apply."

415

services contending that he was entitled to rely upon such promises, and they are binding upon the City even though in fact made without legal authority.

Although these directions and promises might justify the conclusion that an implied contract existed if the respondent were not a municipality, it is necessary to consider whether such a contract could arise in view of the statutory restrictions upon respondent.

█ There can be no doubt that recovery would be barred were libellant employed by the City in a capacity other than that of a seaman. Section 160, subd. 3, of the New York State Labor Law, McK. Consol.Laws, c. 31, prescribes 8 hours as a legal day's work (with exceptions not here relevant), and permits "an agreement for overwork at an increased compensation, except upon work by or for the state or a municipal corporation * * *." This provision has been held to prevent a recovery of overtime compensation by a city employee on either an express or an implied agreement. Burns v. City of New York, 121 App.Div. 180, 105 N.Y.S. 605; McMahon v. State, 178 Misc. 865, 36 N.Y.S.2d 699, 703. In the latter case, involving § 160 of the Labor Law, and wherein compensation for overtime services was sought by a state employee, it was held: "As no official could subject the State to liability for such overtime work by express contract, in the face of the statutory prohibition cited, no such official could by his acts, either positive or negative, create a valid contract implied in fact. Lindlots Realty Corporation v. Suffolk County, 278 N.Y. 45, 52, 53, 15 N.E. 2d 393, 116 A.L.R. 1401; Burns v. City of New York, supra. Statutory limitations upon the power to impose an express contractual obligation binding the State to pay for overtime services are equally applicable to a like contract implied in fact. Miller v. Schloss, 218 N.Y. 400, 406, 407, 113 N.E. 337."

Also pertinent is Section 67 of the New York City Charter, which provides that the Board of Estimate shall "fix the salary of every officer or person whose compensation is paid from the city treasury, other than day laborers." Concededly the Board took

no such action providing for additional or overtime compensation.

But libellant urges that the foregoing provisions, while foreclosing the right of shore-side municipal employees to recover compensation for overtime, do not apply to him in view of the ruling that his rights as a seaman are governed by federal statute rather than by local law. Libellant also points to Order 334, which states that "The provisions of the New York Labor Law do not apply" to the crews of the sludge vessels. He argues that local law, state or municipal, is superseded by the policy of § 673 of Title 46 U.S.C.A., which provides for an eight hour day with a six day week, for seamen, although admittedly making no provision for overtime compensation. Further, he contends that even if Congress has not acted in this field, since libellant was a seaman and his employment was within the maritime and admiralty jurisdiction, no local law can be applicable lest it disturb the uniformity inherent in general maritime law.

The issue, then, is whether the court may disregard the existing local law, state and municipal, delimiting the capacity of respondent to enter into a contract such as the one now at suit, in favor of recovery upon the basis of orders by a master and assurances by other superior officers to a seaman that he would eventually be compensated for overtime either in equivalent time off, or in cash. The court is of the opinion that the local law must be followed and that no essential characteristic policy or feature of the maritime law is violated by a denial of recovery.

█ It is true that local legislation may not encroach upon the province of admiralty law "if it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law". Southern Pacific Co. v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086. Under this principle courts have frequently declined to enforce state statutes affecting maritime rights, Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834;

Chelentis v. Luckenback S.S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171; Union Fish Co. v. Erickson, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261; Garrett v. Moore-Mc-Cormack Co., Inc., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239, and have also refused to apply local law governing municipalities which conflicted with the maritime law. Workman v. New York City, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314; U. S. v. Port of Portland, 9 Cir., 300 F. 724; Frame v. City of New York, D.C., 34 F.Supp. 194; Petition of Highlands Nav. Corp., 2 Cir., 29 F.2d 37.

■ The basic principle upon which libellant rests, that a seaman may rely upon a promise, order or course of conduct by his master or other superiors, must be weighed against the principle that one dealing with an agent of a governmental unit may not, as in the case of a private agent, rely upon "scope of dealing or apparent authority", but must establish his actual authority. Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099; United States v. Willis, 4 Cir., 164 F.2d 453. Although the claim is asserted in admiralty, the court may not ignore the governmental character of the respondent and the doctrine that: "Where the Legislature provides that valid contracts may be made only by specified officers or boards and in specified manner, no implied contract to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply with statutory restrictions and inhibitions can create an obligation or liability of the city." Seif v. City of Long Beach, 286 N.Y. 382, 36 N.E.2d 630, 632. The court is unaware that this rule is in conflict with any principle of admiralty law. The alleged contract is maritime. Berwind-White Coal Mining Co. v. City of New York, 2 Cir., 135 F.2d 443, 446. Although such a contract will be enforced in admiralty even though the court must depart in minor particulars from some of the rules of procedure outlined in the City Charter, Rodgers & Hagerty, Inc., v. City of New York, 2 Cir., 285 F. 362, 364, certiorari denied 261 U.S. 621, 43 S.Ct. 432, 67 L.Ed. 831, or where the court is confronted with "merely a question of departmental meth-od", Moran Towing & Transp. Co. v. City of New York, D.C., 36 F.2d 417, 419, no justification appears in the instant case for departure from the express limitation imposed by both the New York City Charter and the State statute upon the City's power to contract. In both the latter two cases the validity of the contract was not in issue, whereas the present question is whether employees or officials of the city, either by positive or negative acts, could legally have bound it to pay for overtime.

■ The restrictions upon the power to commit the city or upon the city itself should apply equally in admiralty as in a civil suit. Libellant's status as a seaman does not permit recovery upon a contract with the city where it and its officials are without such power. Sheridan v. City of New York, D.C., 145 F. 835. While the traditional policy of the courts to protect seamen as their wards is acknowledged, this must be balanced against the public policy enunciated by statute in New York which does not run counter to federal law or policy, that salaries of governmental employees, whether engaged in strict governmental or proprietary function, shall be subjected to control by the legislative body authorized to pass upon such items. Otherwise, commitments may be made either affirmatively or negatively, which could involve the governmental unit financially and cause it embarrassment, or even lead to fraud and imposition upon it. People ex rel. Rand v. Craig, 231 N.Y. 216, 131 N.E. 894; Stetler v. McFarlane, 230 N.Y. 400, 130 N.E. 591.

■ Libellant's right to recovery must be predicated upon a contract implied from all the circumstances. As a matter of law he must be presumed to have known of the statutory restrictions contained in Section 160(3) of the New York Labor Law and the absence of power of any official except the Board of Estimate, and by appropriate resolution, to fix the rate and wages for overtime services in the Budget. Burns v. City of New York, supra. However, we need not, in the instant case, rest upon a presumption which so often presumes that which is not the fact. Upon the trial, libellant, who has been employed by the City

since 1929, testified he knew the salary for his position was fixed by the Budget and no overtime was provided for. Neither the assurances which followed the orders nor the orders given by the various captains of the sludge vessels, also civil service employees and who, too, seek recovery against the City based upon claims that officials superior to them had made similar promises, can override the statutory limitation and budgetary requirement.

The conclusion is compelled by the law and the facts that libellant has failed to establish a contract implied in fact entitling him to recover.

## II

Separate and apart from the issue of a contract implied in fact, libellant to succeed must overcome another hurdle. The decision herein might well rest upon the disposition made of the first issue, but the importance of the question raised and the number of libellants affected by the ruling justify consideration of the problem so that all the facts and issues may be before higher authority in the event of review.

█ One of the other issues to be determined by the trial court under Judge Ryan's ruling is whether the signing of the payroll without protest constituted an accord and satisfaction. 93c–2.0 of the Administrative Code of the City of New York provides: "Every * * * person who shall sign the receipt upon such payroll as having received the amount therein mentioned in full payment * * * shall be deemed to have made an accord and satisfaction of all claims against the city * * * for the period covered by such payroll, unless * * * the person * * * shall write * * * that the amount * * * is received under protest, and unless such protest is so written * * * no recovery shall be had * * * for wages or salaries for the period of time covered by such payroll."

This provision which has been inflexibly applied by the State courts creates a "statutory accord and satisfaction". Finn v. City of New York, 282 N.Y. 153, 25 N.E.2d 966, 127 A.L.R. 522; Quayle v. City of New York, 278 N.Y. 19, 14 N.E.2d 835; Tos-

cano v. McGoldrick, 300 N.Y. 156, 89 N.E. 2d 873. Thus recovery would be barred by libellant as a city employee

█ The rule is otherwise as to seamen. The burden of proof as to the validity of a release executed by a seaman is upon the person who asserts it. Garrett v. Moore-McCormack Co., Inc., supra; Gahagan Const. Corporation v. Armao, 1 Cir., 165 F.2d 301, certiorari denied 333 U.S. 876, 68 S.Ct. 905, 92 L.Ed. 1152. This doctrine mitigates the strict rule established by the City's Administrative Code, but as held by Judge Ryan, although the acceptance of payments without noting a protest does not of itself effectuate a release of plaintiff's claim, it is potent evidence that such payment was in full under the terms of his employment by the City. As libellant concedes, it is an evidentiary fact to be considered by the court and shifts to him the burden of going forward with proof that acceptance of the base wage was not in full accord and satisfaction of the claims made—a burden which Judge Ryan held was a "very heavy" one under the facts.

In view of the traditional status of seamen as wards of admiralty, the court has carefully scrutinized the circumstances surrounding the execution of the semi-monthly payroll. Hume v. Moore-McCormack Lines, 2 Cir., 121 F.2d 336.

█ Although libellant testified that he often inquired of his superiors as to the status of his overtime claim, he nevertheless recorded his protest but on one or at most two occasions from 1938 to 1946. With actual knowledge that the Budget was made up annually and that provision was required therein based upon action by the Board of Estimate, he took no action other than that noted above. Even after applying the liberal rule enunciated in Garrett v. Moore-McCormack Co., Inc., supra, libellant has failed under the facts disclosed herein to meet the burden cast upon him.

The respondent is entitled to a decree dismissing the libel. Separate findings of fact and conclusions of law are filed herewith.